IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 13, 2025 Session

**THE EDWARD JACKSON YOUNGER FAMILY IRREVOCABLE TRUST,
BY AND THROUGH ANGELA TRACY YOUNGER, TRUSTEE, ET AL.
V.
EVELYN W. ROSS, PERSONALLY AND INDIVIDUALLY AND AS SETTLOR OF THE
EVELYN W. ROSS IRREVOCABLE LIFE INSURANCE TRUST, ET AL.**

**Appeal from the Chancery Court for Knox County**
**No. 192654-2          William T Ailor, Judge[1]**

_____

**No. E2024-01338-COA-R3-CV**

_____

In this case involving the sale of a life insurance policy, the trial court conducted a hearing on the same day regarding the four defendants' various motions to dismiss and the plaintiffs' motion for summary judgment. The court denied the defendants' motions to dismiss. Concerning three defendants, including the appellant, the court partially granted the plaintiffs' motion for summary judgment as to liability upon finding that those defendants had failed to respond to the summary judgment motion. Following a subsequent bench trial, the trial court found that the defendants had breached an agreement with the plaintiffs to sell the life insurance policy directly to the plaintiffs, selling it to a separate trust instead, and that the defendants had done so through a "scheme to defraud" the plaintiffs. Upon the plaintiffs' amended complaint, the trial court also found that the defendants had violated the Tennessee Viatical Settlement Act of 2009, codified at Tennessee Code Annotated § 56-50-101, *et seq.* Finding the defendants to be jointly and severally liable, the trial court awarded to the plaintiffs a judgment in the amount of $418,450.87 plus attorney's fees in the amount of $252,867.19. One of the defendants has appealed. Discerning no reversible error, we affirm the judgment with the correction of one mathematical error. Pursuant to the terms of the trust agreement, we grant the plaintiffs' request for an award of reasonable attorney's fees on appeal. We remand this case to the trial court for enforcement of the modified judgment and for a determination of the plaintiffs' reasonable attorney's fees incurred on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed as Modified; Case Remanded**

---

[1] Sitting by interchange.

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and FRANK G. CLEMENT, JR., P.J., M.S., joined.

W. Tyler Chastain, Knoxville, Tennessee, for the appellant, Robert P. Freeman.

David A. Lufkin, Sr., Knoxville, Tennessee, for the appellees, The Edward Jackson Younger Family Irrevocable Trust, by and through Angela Tracy Younger, Trustee, and Angela Tracy Younger, as Substitute Trustee of the Evelyn W. Ross Irrevocable Life Insurance Trust.

**OPINION**

I.  Factual and Procedural History

On November 15, 2016, the plaintiffs—the Edward Jackson Younger Family Irrevocable Trust, by and through Angela Tracy Younger, and Angela Tracy Younger as substitute trustee of the Evelyn W. Ross Irrevocable Life Insurance Trust (collectively, "Plaintiffs")—filed a "Complaint on Sworn Account" in the Knox County Chancery Court ("trial court").  Plaintiffs named as defendants Evelyn W. Ross, individually and as trustee of the Evelyn W. Ross Irrevocable Life Insurance Trust ("Ross Trust");[2] Michael L. Ross; Robert P. Freeman, individually and as former trustee of the Ross Trust; and John C. Garrison, individually and as substitute trustee of the Ross Trust (collectively, "Defendants").  Plaintiffs averred that in August 2012, Ed Younger, Ms. Younger's father and an agent at the time for The Edward Jackson Younger Family Irrevocable Trust ("Younger Family Trust"), had paid $225,000.00, delivered in two separate checks to Mr. Garrison, in fulfillment of an agreement that Mr. Younger had entered into with Defendants to purchase a life insurance policy ("the Policy") insuring the life of Michael L. Ross.  Mr. Ross had initially purchased the Policy in 1994, and by the time of the 2012 agreement, Lincoln National Life Insurance Company ("Lincoln") had assumed the Policy.

Plaintiffs alleged that instead of transferring the Policy to the Younger Family Trust, as had been agreed, Defendants "conspired and committed a fraudulent scheme to convey" the Policy to the Ross Trust.  Plaintiffs alleged that Defendants had represented at all times to Plaintiffs that the face value of the Policy was one million dollars when in reality the face value had been reduced in 2003 to $859,816.00 and subsequently to $663,426.13 by a $196,389.87 loan that Mr. Ross had taken against the Policy prior to the sale of the Policy.  Plaintiffs further alleged in the complaint:

---

[2] Upon Plaintiffs' motion based on documentary evidence presented at trial, the trial court changed Ms. Ross's designation in the style of the case on the final judgment to "settlor" of the Ross Trust.

The Defendants failed to disclose this information for a period of years, in violation of the contract agreement between the Parties, while in a convoluted and dedicated scheme to commit fraud. This fraud was oral and written and conveyed across state lines, by use of the interstate phone system and the United States Mail. The fraud in this matter was intentional, a conspiracy between the Defendants, together and individually, and was a violation of the agreement and contract between the Parties.

Plaintiffs asserted that the Ross Trust was created via an "Agreement" ("Ross Trust Agreement") signed by Ms. Ross and Robert P. Freeman (the appellant here). According to Plaintiffs, this "Agreement" stated that Mr. Garrison would be the substitute trustee but did not specifically give the right to the original trustee, Mr. Freeman, to resign or elect a substitute. Plaintiffs averred that Mr. Freeman, who was a licensed insurance representative but not a licensed attorney, had drafted the Ross Trust Agreement documents in their entirety. Plaintiffs acknowledged that Mr. Freeman had purportedly resigned as trustee of the Ross Trust in a document dated November 1, 2012, but asserted that the document was ineffective because it had been signed only by Mr. Freeman and Mr. Garrison. Plaintiffs further alleged that Mr. Garrison was a convicted felon and that between October 2012 and January 2015, while acting as a trustee, he had "committed fraud and stole[n] the sum of $44,272.71 from the value" of the Policy.

In their complaint, Plaintiffs sought a judgment in the total amount of $473,581.37. They calculated this total as the $366,294.09 difference between the million dollars the Policy had been represented to be worth in August 2012 and its actual value at that time of $633,705.91, plus $44,272.71 in money taken by fraud by Mr. Garrison and $63,014.57 in interest paid by Plaintiffs to keep the policy in force due to cash loans taken out by the Rosses and Mr. Garrison. Plaintiffs alleged claims of "[breach] of contract, fraud, unjust enrichment or any other theory of obligation of the Defendants upon discovery in this cause." Plaintiffs also sought reasonable attorney's fees and costs.

Plaintiffs attached various documents to their complaint, including cancelled checks; a "Certificate of Insurance" showing the million dollar policy insuring Mr. Ross and owned by the Ross Trust with the Younger Family Trust as beneficiary; a "Trust Agreement for the Evelyn W. Ross, Irrevocable Life Insurance Trust," executed by Ms. Ross and Mr. Freeman on August 22, 2012; a letter executed by Ms. Ross on August 22, 2012, indicating that she was the owner of the Policy and had conveyed her interest to the Ross Trust; and the document executed by Mr. Freeman and Mr. Garrison wherein Mr. Freeman had purportedly resigned as trustee effective November 1, 2012. This last document was executed on August 24, 2012, by Mr. Freeman and Mr. Garrison and purported to hold Mr. Freeman harmless "from any and all actions arising related to this Trust."[3]

---

[3] At trial, Mr. Freeman stated that he had not sent his resignation notice to Plaintiffs until October 31, 2012.

- 3 -

On December 19, 2016, Ms. Ross filed a motion to dismiss the complaint for failure to state a claim upon which relief could be granted. Mr. Ross subsequently filed a separate motion to dismiss. On January 30, 2017, Mr. Freeman filed his own motion to dismiss. The record contains only the first page of Mr. Freeman's motion and an attached "Sworn Denial of Account" executed by Mr. Freeman. In his sworn denial, Mr. Freeman denied owing any sums to either of the trusts involved. Plaintiffs filed separate responses to the motions to dismiss.[4] In their response to Mr. Freeman's motion, Plaintiffs opposed what appear to have been Mr. Freeman's arguments that (1) Plaintiffs had not provided information on an "account" for a complaint on a sworn account; (2) the complaint violated a four-year statute of limitations under Tennessee Code Annotated § 47-2-725 (regarding contracts for sale); and (3) the complaint lacked particularity and proof of allegations.

By August 2017, only Ms. Ross had filed a response to the complaint, and Plaintiffs filed a motion to compel the other Defendants to respond. The trial court entered an order on August 14, 2017, directing, *inter alia*, all Defendants except Ms. Ross to file "an appropriate pleading response" within ten days. Upon Defendants' requests for production, Plaintiffs filed originals of the initial exhibits to their complaint and other documents in support of their claims.

On January 9, 2018, Plaintiffs filed a motion for summary judgment, requesting judgment on the merits of the case and averring that only Mr. Garrison had filed an answer to the complaint. Plaintiffs filed a "Separate Concise Statement of Material Facts" in support of their motion, stating the facts as alleged in the complaint. Acting through counsel, Ms. Ross filed a response opposing the summary judgment motion, and Mr. Ross filed a *pro se* notice that he was joining in Ms. Ross's response. On April 10, 2018, Plaintiffs filed a "Motion to Deem Material Facts Filed in Support of Plaintiff's Motion for Summary Judgment Substantiated as to Defendants Mr. Ross, Freeman and Garrison."

Following a hearing regarding the Rosses' and Mr. Freeman's motions to dismiss and Plaintiffs' motion for summary judgment, the trial court entered three orders on April 24, 2018. In the first order, the court denied Defendants' motions to dismiss. The court found in pertinent part that (1) "the six year statute of limitations on contract issues applies in this instance," (2) Tennessee Code Annotated § 24-5-107 "regarding sworn accounts does not limit the Plaintiff's allegations in this litigation," and (3) "when the Complaint is taken in its entirety it sets out specific particulars that are sufficient to comply with the Rules of Civil Procedure." The court simultaneously entered a second order finding that venue was proper in response to an argument raised by the Rosses.

---

[4] Because Mr. Freeman is the sole defendant participating in this appeal, we have included only the procedural history pertinent to him.

In its third order, the trial court granted Plaintiffs' motion for summary judgment as to liability regarding all Defendants except Ms. Ross. The court determined that "the failure of these three Defendants, Mr. Garrison, Mr. Freeman and Mr. Ross, to properly defend and file an appropriate response in this matter creates a situation in which this Court has no latitude other than to grant the Motion for Summary Judgment filed by the Plaintiff." Mr. Freeman's former counsel, who had represented him since December 2016, appeared during the April 2018 hearing on the summary judgment motion and admitted that he had not filed a response.

On May 10, 2018, Mr. Freeman's current counsel filed a notice of representation, and one week later Mr. Freeman filed a motion to set aside the summary judgment order based on "excusable neglect." Mr. Freeman attached affidavits executed by himself and his former counsel in support of the motion. Plaintiffs filed a response opposing Mr. Freeman's motion to set aside the partial summary judgment order. Mr. Freeman subsequently filed two memoranda of law in support of his motion to set aside, and Plaintiffs filed a reply.

Following a hearing, the trial court entered an order on January 7, 2019, addressing the various motions, including Mr. Freeman's motion to set aside the partial summary judgment order. The court reiterated its prior findings, determining:

> [T]he Court is of the opinion that the failure of these three Defendants, Mr. Garrison, Mr. Freeman and Mr. Ross, to properly defend and file an appropriate response in this matter creates a situation in which this Court has no latitude other than to uphold the Motion for Summary Judgment entered by this Court on April 24, 2018, and therefore, said Motions filed by these Defendants to set aside said Order are hereby DENIED.

Accordingly, the trial court denied Mr. Freeman's motion to set aside the partial summary judgment order.

On January 23, 2019, Mr. Freeman filed a motion for permission to file an interlocutory appeal regarding the partial summary judgment ruling concerning liability. Mr. Garrison and Mr. Ross also each filed a motion for interlocutory appeal, and Plaintiffs filed responses opposing the motions. The trial court denied the motions for permission to file an interlocutory appeal in an order entered on March 22, 2019. In an incorporated memorandum opinion, the court concluded that "none of the three defendants have raised any meritorious defense in their motions for interlocutory appeal."

On April 8, 2019, Mr. Freeman filed an answer to the complaint. Upon a motion to strike filed by Plaintiffs, the trial court entered an order on September 27, 2019, granting the motion in part concerning any defenses Mr. Freeman attempted to raise that had already been ruled upon with the grant of partial summary judgment. The court allowed Mr.

Freeman to file an amended answer, noting that it needed to be a sworn answer. Mr. Freeman filed an amended verified answer on October 1, 2019, denying "all allegations as to any fraud, conspiracy, or violation of any agreement or contract." He raised affirmative defenses of (1) failure to state a claim upon relief could be granted, (2) inappropriate filing of a complaint on sworn account pursuant to Tennessee Code Annotated § 24-5-107, (3) the statute of limitations provided in Tennessee Code Annotated § 28-3-105 as a time-bar to tort claims of fraud and misrepresentation, (4) laches, (5) comparative fault, (6) failure to mitigate damages, and (7) Plaintiffs' alleged knowledge of the Policy's net death benefit. On October 11, 2019, Mr. Freeman filed a motion to file a second amended answer with the added affirmative defense of the statute of limitations under Tennessee Code Annotated § 35-15-1005(c) regarding judicial proceedings against trustees for breach of trust.

The trial court conducted a bench trial on October 14-15, 2019, and February 7-8, 2023. During the October 2019 session of trial, Plaintiffs called Mr. Ross, Ms. Ross, Mr. Garrison, and Mr. Freeman as adverse witnesses. Mr. Freeman was the last to testify on October 15, and the court suspended Plaintiffs' proof at the point that Mr. Freeman's adverse direct examination had been completed. At the close of the October 2019 proceeding, the court stated that Plaintiffs would be allowed to amend their pleadings to "allege those specific allegations with regard to the statutes that [Plaintiffs' counsel] chooses to follow up on." On November 12, 2020, the court entered an order to this effect and also directed that Defendants would be allowed to file responsive pleadings to Plaintiffs' amended complaint. The court initially continued the trial until February 2020.[5]

A week prior to trial, Mr. Freeman had filed another motion to revise the grant of summary judgment as to liability, arguing in part that depositions taken since his previous motions to set aside had brought new evidence to light. He also filed a response disputing many of the facts in Plaintiffs' statement of undisputed material facts. Plaintiffs filed a response opposing Mr. Freeman's motion to revise. On November 7, 2019, the trial court entered an order denying Mr. Freeman's "Motion to Revise the Grant of Summary Judgment as to Liability to Plaintiffs" upon finding that the depositions did not warrant setting aside the partial summary judgment order.

Trial did not resume until February 7, 2023. The trial court observed in the memorandum opinion attached to the final judgment that the case had been "snake bit from the beginning." The court noted interruptions due to the COVID-19 pandemic and "medical situations that caused multiple continuances." The parties submitted multiple filings during the three and one-half years between trial sessions. Specifically relevant to this appeal, on December 16, 2019, Plaintiffs filed an amended verified complaint in

---

[5] Prior to the October 2019 trial session, Ms. Ross had filed cross-claims against Mr. Freeman and Mr. Garrison. By agreed order entered on October 14, 2019, these cross-claims were voluntarily nonsuited. Likewise, the trial court also entered an order of voluntary nonsuit on October 14, 2019, recognizing Mr. Freeman's voluntary nonsuit of cross-claims that he had filed against Mr. Garrison and Mr. Ross.

- 6 -

response to the trial court's ruling at the close of the 2019 session of trial wherein the court granted Plaintiffs the opportunity to amend their complaint to conform to the evidence presented at trial. In the amended complaint, Plaintiffs repeated their initial claims and claimed for the first time in a pleading that they were entitled to damages under the Tennessee Viatical Settlement Act of 2009 ("Viatical Settlement Act").[6] Within their breach of contract claim, Plaintiffs also added an allegation that Defendants had violated the implied contract of good faith and fair dealing.

Mr. Freeman filed an answer and a motion to dismiss Plaintiffs' amended verified complaint on January 9, 2020, invoking affirmative defenses predicated on the statutes of limitations for torts rather than contracts and for actions against trustees. Additionally, Mr. Freeman raised his previous argument concerning the inapplicability of a complaint on a sworn account. Mr. Freeman also argued that Plaintiffs' Viatical Settlement Act claim was time barred by operation of Tennessee Code Annotated § 28-3-105(3) regarding violations of a state statute. Raising the issue of the partial summary judgment order again, Mr. Freeman filed a "Motion to Reconsider, Revise and Set Aside the Grant of Summary Judgment as to Liability to Plaintiffs" on January 13, 2020. He argued that because Plaintiffs had failed to "specifically refer to or adopt" their original complaint in their amended complaint, their original complaint had been superseded by the amended complaint and resulted in "this litigation restarting."

Following a hearing, the trial court entered an order on March 10, 2020, granting Mr. Freeman's motion to dismiss only as to claims brought against him as the former trustee of the Ross Trust. The court determined that "the claim as to Mr. Freeman, as former Trustee shall be dismissed as barred by the applicable statute of limitations against a Trustee based upon his resignation of October 31, 2012 pursuant to Tenn. Code Ann. § 35-15-[1005](c)."[7] However, the court denied Mr. Freeman's motion to dismiss regarding any claims brought against him individually, including "claims asserted as to fraud and in the Tennessee Viatical Settlement Act under Tenn. Code Ann. § 28-3-105(3)."

On April 9, 2020, Plaintiffs filed a motion to reconsider the order granting Mr. Freeman's motion to dismiss, arguing that Mr. Freeman had untimely raised the statute of limitations defense under Tennessee Code Annotated § 35-15-1005(c) and that the court's previous decision as to liability must stand. Mr. Freeman filed a response opposing the motion. Based on the pleadings (at a time when in-person hearings had been suspended due to COVID), the trial court entered an order on May 29, 2020, setting aside its prior

---

[6] A "viatical settlement contract" is generally defined as "a written agreement between a viator and a viatical settlement provider establishing the terms under which compensation or anything of value is or will be paid . . . in return for the viator's present or future assignment, transfer, sale, devise or bequest of the death benefit or ownership of any portion of the insurance policy or certificate of insurance[.]" Tenn. Code Ann. 56-50-102(15)(A).

[7] The trial court inadvertently cited Tennessee Code Annotated § 35-15-105(c).

order granting Mr. Freeman's motion to dismiss. The court found that the Ross Trust Agreement did not grant Mr. Freeman the power to appoint a substitute trustee and that "therefore neither his resignation nor his 'appointment' of Garrison was valid."

During the final two days of trial in February 2023, the proof began with cross-examination of Mr. Freeman by his counsel. Plaintiffs also presented testimony by plaintiff Angela Tracy Younger with multiple documentary exhibits, as well as an affidavit of attorney's fees for Plaintiffs' counsel. Following trial, the parties filed competing findings of fact and conclusions of law, as well as various post-judgment motions not at issue here. The court then announced its ruling during a hearing conducted on July 10, 2024.

On August 7, 2024, the trial court entered a final judgment, determining that Plaintiffs had "met their burden of proof" and were "entitled to a judgment against Defendants, jointly and severally, with the exception of Mrs. Ross listed as trustee, in the amount of $418,450.87, plus attorney's fees of $252,867.19 for a total judgment of $684,861.13, and all costs of this cause."[8] The court attached and incorporated a transcript of its ruling, confirming its prior ruling that Mr. Freeman, Mr. Garrison, and Mr. Ross were liable for breach of contract. The court also found that "this was a viatical settlement under the viatical settlement statute and that the viatical settlement was violated in multiple ways." The court further determined that "all of the Defendants entered into a common scheme to defraud the Plaintiffs thereby coming into this court with unclean hands." Mr. Freeman timely appealed.

## II. Issues Presented

Mr. Freeman presents five issues on appeal, which we have reordered, consolidated, and restated as follows:

1.  Whether the trial court erred by declining to set aside its interlocutory grant of partial summary judgment in favor of Plaintiffs and against Mr. Freeman as to liability.

2.  Whether the trial court erred by finding that Plaintiffs' claims against Mr. Freeman were timely under the six-year statute of limitations provided in Tennessee Code Annotated § 28-3-109(a) rather than applying the three-year statute of limitations for tort claims provided in Tennessee Code Annotated § 28-3-105(1).

---

[8] We note a mathematical error in the trial court's calculation of the total amount of the judgment, which we will address more fully in a subsequent section of this Opinion.

3. Whether the trial court erred by finding that Mr. Freeman's resignation as trustee of the Ross Trust had been void and thereby erred in declining to find that Plaintiffs' claims against Mr. Freeman as trustee were time barred pursuant to Tennessee Code Annotated § 35-15-1005(c).

4. Whether the trial court erred by declining to find that Plaintiffs' claim under the Tennessee Viatical Settlement Act was time barred.

5. Whether the trial court erred by entering a judgment against Mr. Freeman for joint and several damages with other Defendants and for attorney's fees.

### III. Standard of Review

Mr. Freeman challenges both the trial court's grant of partial summary judgment concerning liability and the court's damages judgment entered after a non-jury trial. The grant or denial of a motion for summary judgment is a matter of law; therefore, our standard of review is *de novo* with no presumption of correctness. *See Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015); *Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 671 (Tenn. 2013) (citing *Kinsler v. Berkline, LLC*, 320 S.W.3d 796, 799 (Tenn. 2010)). As such, this Court must "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Rye*, 477 S.W.3d at 250. As our Supreme Court has explained concerning the requirements for a movant to prevail on a motion for summary judgment pursuant to Tennessee Rule of Civil Procedure 56:

[W]hen the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id.* When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee

Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.* [*v. Zenith Radio Corp.*], 475 U.S. [574,] 586, 106 S. Ct. 1348 [(1986)]. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye*, 477 S.W.3d at 264-65. Pursuant to Tennessee Rule of Civil Procedure 56.04, the trial court must "state the legal grounds upon which the court denies or grants the motion" for summary judgment, and our Supreme Court has instructed that the trial court must state these grounds "before it invites or requests the prevailing party to draft a proposed order." *See Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 316 (Tenn. 2014). "Whether the nonmoving party is a plaintiff or a defendant—and whether or not the nonmoving party bears the burden of proof at trial on the challenged claim or defense—at the summary judgment stage, '[t]he nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.'" *TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 879, 889 (Tenn. 2019) (quoting *Rye*, 477 S.W.3d at 265).

Our review of the trial court's judgment following a non-jury trial is *de novo* upon the record with a presumption of correctness as to the trial court's findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Kelly v. Kelly*, 445 S.W.3d 685, 691-92 (Tenn. 2014). "In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006) (citing *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001)). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002).

We review the trial court's conclusions of law, including its interpretation of a written agreement, *de novo* with no presumption of correctness. *See Ray Bell Constr. Co., Inc. v. State, Tenn. Dep't of Transp.*, 356 S.W.3d 384, 386 (Tenn. 2011); *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009). While "the amount of damages to be awarded in a particular case is essentially a fact question," "the choice of the proper measure of damages is a question of law . . . ." *GSB Contractors, Inc. v. Hess*, 179 S.W.3d 535, 541 (Tenn. Ct. App. 2005) (quoting *Beaty v. McGraw*, 15 S.W.3d 819, 827 (Tenn. Ct. App. 1998)).

## IV. Propriety and Effect of Grant of Partial Summary Judgment

The trial court entered partial summary judgment against Mr. Freeman in April 2018 concerning liability because he had failed to respond to Plaintiffs' summary judgment motion as required by Tennessee Rule of Civil Procedure 56. In his first motion to set aside, filed in May 2018 pursuant to Tennessee Rule of Civil Procedure 60.02, Mr. Freeman argued that his failure to respond to Plaintiffs' summary judgment motion was excusable neglect because it was due to the admitted inaction of his former counsel. In its January 2019 order, the trial court upheld the grant of partial summary judgment. Mr. Freeman subsequently filed a motion for permission to file an application for interlocutory appeal, and the trial court denied the motion. In October 2019, Mr. Freeman filed a second motion to set aside (or revise) the partial summary judgment order, relying on Tennessee Rule of Civil Procedure 54.02 to assert that a deposition taken of Ms. Younger since entry of the summary judgment order constituted newly discovered evidence that established genuine issues of material fact. The trial court denied the Rule 54.02 motion in its November 7, 2019 order.

In January 2020, Mr. Freeman filed a third motion to set aside the grant of partial summary judgment, now arguing that Plaintiffs' filing of the amended complaint had "restart[ed]" the litigation. The trial court ruled on this third motion to set aside within its March 10, 2020 order wherein the court initially granted Mr. Freeman's motion to dismiss claims brought against him as the former trustee of the Ross Trust based on his purported resignation as trustee in November 2012. The trial court denied, in part, the motion to set aside the partial summary judgment order, determining that "the summary judgment shall remain in place only as to those claims pending pursuant to the Complaint on a Sworn Account as of the date of the April 24, 2018 grant of summary judgment." However, the court determined that the partial summary judgment would "not be applicable to any allegations or cause of action set forth in the Plaintiffs' Amended Verified Complaint." Upon Plaintiffs' motion to reconsider, the trial court entered its May 29, 2020 order setting aside the "Order Dismissing Freeman as former Trustee."

On appeal, Mr. Freeman states that "[d]ue to the actions of his prior counsel" in failing to respond, "the grant of partial summary judgment as to liability should have been

set aside." However, beyond this assertion, Mr. Freeman does not focus on the trial court's rejection of his argument that his former counsel's failure to respond constituted excusable neglect. Instead, Mr. Freeman contends that the trial court should have set aside the grant of summary judgment as to liability because (1) Plaintiffs' initial complaint was improper as a complaint on a "sworn account" and (2) Plaintiffs' amended complaint commenced a new action that destroyed the effect of the initial complaint. Plaintiffs respond that the trial court properly denied Mr. Freeman's motions to set aside the grant of partial summary judgment. They argue that once the trial court entered the order finding liability, that portion of the case was complete and only the damages portion remained.

At the outset, we discern no error in the trial court's initial grant of partial summary judgment concerning liability when Mr. Freeman had failed to respond to Plaintiffs' summary judgment motion. Tennessee Rule of Civil Procedure 56.03 provides in pertinent part:

> In order to assist the Court in ascertaining whether there are any material facts in dispute, any motion for summary judgment made pursuant to Rule 56 of the Tennessee Rules of Civil Procedure shall be accompanied by a separate concise statement of the material facts as to which the moving party contends there is no genuine issue for trial. Each fact shall be set forth in a separate, numbered paragraph. Each fact shall be supported by a specific citation to the record.
>
> Any party opposing the motion for summary judgment must, not later than five days before the hearing, serve and file a response to each fact set forth by the movant either (i) agreeing that the fact is undisputed, (ii) agreeing that the fact is undisputed for purposes of ruling on the motion for summary judgment only, or (iii) demonstrating that the fact is disputed. Each disputed fact must be supported by specific citation to the record. Such response shall be filed with the papers in opposition to the motion for summary judgment.
>
> In addition, the non-movant's response may contain a concise statement of any additional facts that the non-movant contends are material and as to which the non-movant contends there exists a genuine issue to be tried. Each such disputed fact shall be set forth in a separate, numbered paragraph with specific citations to the record supporting the contention that such fact is in dispute.

*See C&C N. Am. Inc. v. Natural Stone Distribs., LLC*, 571 S.W.3d 254, 267 (Tenn. Ct. App. 2018) ("[T]he material facts set forth in the statement of the moving party may be deemed admitted in the absence of a statement controverting them by the opposing party." (quoting *SunTrust Bank v. Ritter*, No. E2017-01045-COA-R3-CV, 2018 WL 674000, at *5 (Tenn. Ct. App. Feb. 1, 2018))).

As this Court has recently explained:

"'The requirements of Tennessee Rule of Civil Procedure 56.03 are mandatory, and it is not the duty of the court, trial or appellate, to search the record in order to find a material dispute of fact.'" *Nunley v. Farrar*, No. M2020-00519-COA-R3-CV, 2021 WL 1811750, at *4 (Tenn. Ct. App. May 6, 2021) (quoting *Williams v. Watson*, No. E2005-02403-COA-R3-CV, 2007 WL 187925, at *9 (Tenn. Ct. App. Jan. 25, 2007)). "Although a trial court, 'acting within its discretion, may waive the requirements of the rule in an appropriate situation,' this Court has previously concluded that a trial court's refusal to waive the 'strict requirements' of Rule 56.03 is not error." *Haren Constr. Co., Inc. v. Ford*, 699 S.W.3d 902, 910 (Tenn. Ct. App. 2024) (quoting *Owens* [*v. Bristol Motor Speedway, Inc.*], 77 S.W.3d [771,] 774 [(Tenn. Ct. App. 2001)]); *see, e.g.*, *Wilmington Sav. Fund Soc'y, FSB v. Jackson*, No. E2021-00300-COA-R3-CV, 2021 WL 4465800, at *5-6 (Tenn. Ct. App. Sept. 30, 2021) ("[T]he trial court held Plaintiff to its obligations under the rule and, again, Plaintiff has not explained in its brief how this amounts to an abuse of discretion. Consequently, we deem it prudent to leave the trial court's decision in this case undisturbed.").

*Brecker v. Story*, No. M2023-01640-COA-R3-CV, 2025 WL 304571, at *8 (Tenn. Ct. App. Jan. 27, 2025).

In this case, Plaintiffs maintain that their concise statement of material facts repeated the allegations of their initial complaint, and upon review of the record, we agree. Therefore, the trial court properly adopted the allegations of the complaint as true insofar as Plaintiffs' concise statement of material facts mirrored the allegations. *See* Tenn. R. Civ. P. 56.03; *Brecker*, 2025 WL 304571, at *8. We note that although the requirements of Rule 56.03 are mandatory for litigants, a court's decision to waive the requirements in an appropriate situation is discretionary. *See Brecker*, 2025 WL 304571, at *8. A trial court abuses its discretion only when it applies an incorrect legal standard, reaches an illogical result, commits clear error in its assessment of the evidence, or relies upon flawed reasoning that results in an injustice. *Armbrister v. Armbrister*, 414 S.W.3d 685, 693 (Tenn. 2013). "The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court." *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001). In this situation, particularly recognizing the trial court's findings regarding the notice given to Defendants of both the summary judgment motion and the continued hearing date for the motion, we find no abuse of discretion in the trial court's decision to grant partial summary judgment on liability in favor of Plaintiffs and against Mr. Freeman based on his failure to respond to Plaintiffs' statement of material facts.

As an overarching argument, Mr. Freeman contends that the trial court erred by finding that Plaintiffs' initial complaint was viable as a complaint on a "sworn account" and thus erred by entering partial summary judgment in favor of Plaintiffs. Mr. Freeman raised this argument in his motions to dismiss the initial complaint and as an affirmative defense in his amended answer. The question of whether the complaint was viable is a matter of law, which we review *de novo*. *See Rye*, 477 S.W.3d at 250.

Mr. Freeman argues that because Plaintiffs styled their pleading as a "Complaint on a Sworn Account," they were claiming a sworn account under Tennessee Code Annotated § 24-5-107 and therefore were required to show an account upon which Mr. Freeman owed them a debt rather than a claim for damages. In addition to titling their initial complaint as one on a sworn account, Plaintiffs referred in their complaint to the "amount sought" as "the difference between the value of the policy claimed at the sale in August 2012, $1,000,000.00 and its actual[] value at that time, $633,705.91," plus $44,272.71 in money taken by fraud by Mr. Garrison and $63,014.57 in interest paid by Plaintiffs to keep the policy in force due to cash loans taken out by the Rosses and Mr. Garrison. Plaintiffs averred that these amounts "total[ed] the $473,581.37 of the Sworn Account." Plaintiffs did not refer to § 24-5-107 in their complaint. In response to Defendants' arguments that Plaintiffs had improperly filed a complaint on a sworn account, Plaintiffs' counsel explained during the first session of trial that styling the action as one on a "sworn account" was their method of obtaining a default judgment if Defendants failed to deny Plaintiffs' allegations. *See* Tenn. Code Ann. § 24-5-107(b) (West June 12, 1995, to current) (providing that upon a defendant's denial of an account under oath, "the judge shall continue the action to a date certain for trial").

In support of his argument that Plaintiffs' use of the term, "sworn account," limited their initial complaint to a claim on a debt, Mr. Freeman relies on this Court's decision in *Nickell, Inc. v. Psillas*, No. M2004-02975-COA-R3-CV, 2006 WL 1865018 (Tenn. Ct. App. June 30, 2006). We find *Nickell* to be highly factually distinguishable from the instant action. In *Nickell*, the dispositive issue was whether the action had been filed in the proper county. *Nickell*, 2006 WL 1865018, at *2. Because the plaintiff had sought to collect a debt in the county of his principal place of business, Maury County, he argued that he had properly filed the action there, and the trial court found that venue was proper. *Id.* at *3. However, this Court determined that the gravamen of the complaint was a contract action and that when the parties had executed the contract and the defendants had performed the related work, both parties had been located in Williamson County. *Id.* at *9-10 (further determining that even if the action had been one to collect a debt, the proper county would have been Williamson County as the county where the debt was to be paid). This Court therefore reversed the trial court's finding that venue had been proper in Maury County and accordingly dismissed the complaint. *Id.* at *10. The complaint in *Nickell* was not dismissed because the plaintiff had improperly used the term, "sworn account," as Mr. Freeman suggests.

In its April 2018 order denying Defendants' motions to dismiss, the trial court found that § 24-5-107 "regarding sworn accounts [did] not limit [Plaintiffs'] allegations in this litigation." We agree with the trial court. Plaintiffs' action was not one on a sworn account. Although Plaintiffs' use of the term in the style of the complaint and in their damages request was potentially confusing, the allegations and claims in the complaint were clear and did not set forth a sworn account on a debt or rely on § 24-5-107. We conclude that Plaintiffs' inclusion of the term, "sworn account," did not determine the gravamen of the action or bar Plaintiffs from recovery. *See Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 457 (Tenn. 2012) (explaining that the gravamen of a complaint "does not involve the 'designation' or 'form' of the action"). The trial court did not err in declining to set aside the partial summary judgment order because Plaintiffs had styled their initial complaint as one on a "sworn account."

Furthermore, we discern no error in the trial court's refusal to set aside the partial summary judgment order based on Mr. Freeman's first motion to set aside, filed pursuant to Tennessee Rule of Civil Procedure 60.02(1), which provides for relief from a judgment due to "mistake, inadvertence, surprise or excusable neglect." The standard of review applicable to requests for relief filed pursuant to Tennessee Rule of Civil Procedure 60.02 is whether the trial court abused its discretion. *See Turner v. Turner*, 473 S.W.3d 257, 268 (Tenn. 2015).[9]

In its January 2019 order, the trial court found that when retaining his prior counsel, Mr. Freeman "thought he was hiring an attorney who would represent him and . . . do a good job for him" but "that was not the case" when Mr. Freeman's prior counsel failed to respond to the summary judgment motion. However, relying upon our Supreme Court's decision in *Food Lion, Inc. v. Washington Cnty. Beer Bd.*, 700 S.W.2d 893 (Tenn. 1985), the trial court denied Mr. Freeman's motion upon finding that Mr. Freeman's prior counsel's inaction did not constitute excusable neglect under Rule 60.02(1). As the *Food Lion* Court explained:

> It has been declared that the mere negligence or inattention of a party is no ground for vacating a judgment against him. Carelessness is not synonymous with excusable neglect. Mere forgetfulness of a party to an action is not a sufficient ground for vacating or setting aside a judgment by default. Parties are not justified in neglecting their cases merely because of the stress or importance of their own private business and such neglect is ordinarily not excusable.

---

[9] The exception to the abuse of discretion standard when reviewing a Rule 60.02 motion occurs when a party seeks relief from a judgment under Tennessee Rule of Civil Procedure 60.02(3), which states that a court may relieve a party from a final judgment if "the judgment is void." Tenn. R. Civ. P. 60.02(3). We review a trial court's ruling on a request for relief under Rule 60.02(3) *de novo* with no presumption of correctness. *See Turner*, 473 S.W.3d at 269.

- 15 -

700 S.W.2d at 896 (quoting 46 Am. Jur. 2d 874-75 *Judgments* § 718 (1969)). The Court concluded: "[T]he fact that the defendant board was represented by a busy lawyer is no ground for Rule 60.02 relief." *Food Lion*, 700 S.W.2d at 896. Likewise, here, we determine that the trial court did not abuse its discretion by denying Mr. Freeman's Rule 60.02(1) motion to set aside the grant of partial summary judgment based on the inaction of his prior counsel.

We also discern no error in the trial court's refusal to set aside the partial summary judgment order upon Mr. Freeman's second motion to set aside, filed pursuant to Tennessee Rule of Civil Procedure 54.02, which provides that a non-final order is "subject to revision at any time before the entry of the judgment adjudicating all the claims and the rights and liabilities of all the parties." We review a trial court's decision regarding a Rule 54.02 motion according to the abuse of discretion standard. *See Harris v. Chern*, 33 S.W.3d 741, 746 (Tenn. 2000). Mr. Freeman argued that Ms. Younger's deposition, taken since the summary judgment hearing, constituted new evidence that created genuine issues of material fact. Our Supreme Court has set forth the following applicable balancing test:

> When additional evidence is submitted in support of a Rule 54.02 motion to revise a grant of summary judgment, a trial court should consider, when applicable: 1) the movant's efforts to obtain evidence to respond to the motion for summary judgment; 2) the importance of the newly submitted evidence to the movant's case; 3) the explanation offered by the movant for its failure to offer the newly submitted evidence in its initial response to the motion for summary judgment; 4) the likelihood that the nonmoving party will suffer unfair prejudice; and 5) any other relevant factor.

*Id.* at 745.

Applying this test to Ms. Younger's deposition, the trial court determined that (1) Mr. Freeman had "made no effort to discover the information prior to the motion for summary judgment"; (2) it was "impossible to determine the importance of the newly discovered evidence" without a corresponding deposition from Mr. Younger, which the parties had failed to obtain prior to Mr. Younger's death; (3) prior counsel's inaction was "not a reason to set aside summary judgment"; and (4) "the likelihood that [Plaintiffs would] suffer unfair prejudice by the granting of the motion preponderate[d] against [Mr. Freeman]." Upon review, we determine that the trial court did not abuse its discretion in denying Mr. Freeman's second motion to revise the partial summary judgment order.

Finally, Mr. Freeman contends that the trial court should have set aside the partial summary judgment order because when Plaintiffs filed their amended complaint without "specifically refer[ring] to or adopt[ing]" their initial complaint, the effects of the initial complaint as a pleading were destroyed. Mr. Freeman states that the amended complaint was "on new and different theories without any adoption of the original Complaint." In

response, Plaintiffs describe the full title of their amended complaint: "Amended Verified Complaint as Required by Court Order Entered November 12, 2019 Mid-Trial," emphasizing that the amended complaint was entered according to the trial court's order directing that Plaintiffs would be allowed to amend their complaint to conform to the evidence that had been presented during the first session of trial. Plaintiffs further assert that they added their claim under the Viatical Settlement Act in the amended complaint only after Mr. Freeman had testified during the first trial session that he was a licensed agent for viatical settlements and had opined that the Ross Trust was not a viatical settlement.[10]

In its November 12, 2019 order, the trial court directed that Plaintiffs "may amend their Complaint citing whatever statutory authority and other matters necessary" and that "Defendants may then file Amended Answers to the Amended Complaint." The court incorporated into the order a partial transcript of its ruling from the close of the October 2019 trial session, wherein the court referenced Tennessee Rule of Civil Procedure 15.02:

> With regard to Rule 15.02, amendments to conform to the evidence, the rule reads when issues not raised by the pleadings are tried by express or implied consent of all the parties, they shall be treated in all respects as if they had been raised in the pleadings.

> Obviously, there has been no implied or expressed consent that these issues be tried. The rule goes on further to say if evidence is objected to at the trial on the grounds that it is not within the issues made by the pleadings, the Court may allow the pleadings to be amended and shall do so freely. When the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the Court that the admission of such evidence would prejudice that party in maintaining the action or defense upon merits. The Court may grant a continuance to enable the objecting party to meet such evidence.

Accordingly, Plaintiffs amended their complaint to include their claim under the Viatical Settlement Act, and Mr. Freeman filed an answer, motion to dismiss, and his third motion to set aside the partial summary judgment order.

Mr. Freeman correctly observes that Plaintiffs did not include a direct reference to their initial complaint in their amended complaint. It is also true that the trial court did not directly address Mr. Freeman's argument that Plaintiffs' amended complaint "restarted" the litigation. However, when the court originally granted Mr. Freeman's motion to

---

[10] In her March 2019 cross-claim against Mr. Freeman, Ms. Ross was the first to allege that Mr. Freeman had violated the Viatical Settlement Act. Ms. Ross subsequently voluntarily nonsuited her cross-claim shortly before the first trial session.

dismiss predicated on his purported resignation as trustee, the court delineated between claims against Mr. Freeman as trustee and those against him as an individual, inclusive of both the initial and amended complaints. The court thereby impliedly rejected Mr. Freeman's argument that all previous effects of the initial complaint had been destroyed by Plaintiffs' filing of the amended complaint. Moreover, the trial court clearly considered the entire procedural history of the case in its final judgment and viewed Plaintiffs' amended complaint as an amendment to the original.

In support of his argument, Mr. Freeman relies on the following proposition from this Court's decision in *McBurney v. Aldrich*:

> An "amendment" to a complaint merely modifies the complaint which remains before the court as modified. However, an "amended complaint[,"] complete in itself without adoption or reference to the original, supersedes and destroys the original as a pleading.

816 S.W.2d 30, 33 (Tenn. Ct. App. 1991) (citing *Louisville & N.R. Co. v. House*, 56 S.W. 836 (Tenn. 1900)); *see Christian v. Lapidus*, 833 S.W.2d 71, 73 (Tenn. 1992) (citing *McBurney* with approval and noting that the Tennessee Rules of Civil Procedure mirror the Federal Rules of Civil Procedure in this regard).

We determine this case to be distinguishable from both *McBurney* and *Christian*. In *McBurney*, unlike here, the issue was "refusal of leave to file the amended complaint," and no responsive pleading had been filed. *See McBurney*, 816 S.W.2d at 33. In *Christian*, also dissimilar to this case, the appellees did not name the appellants as defendants in their amended complaint and expressly stated that their amended complaint superseded their original complaint. *See Christian*, 833 S.W.2d at 72-73. Both cases are inapposite.

We find instructive this Court's decision in *Shell v. Williams*, No. M2013-00711-COA-R3-CV, 2014 WL 118376 (Tenn. Ct. App. Jan. 14, 2014). In *Shell*, the appellant had filed a "Motion to Amend the Pleadings to add an additional Counter-Claim," which the trial court had granted, but the appellant's "pleading [did] not specifically say that it serve[d] as an amendment to her original counter-complaint." *Shell*, 2014 WL 118376, at *2 n.4. First noting the rule as set forth above in *McBurney*, the *Shell* Court concluded:

> [W]e perceive [the appellant's] intention was not to supplant her earlier pleading with an amended complaint. *See Dobbs v. Guenther*, 846 S.W.2d 270, 273 (Tenn. Ct. App. 1992) (noting that we look to the substance of a pleading, rather than its form, to determine the filer's intent). Rather, [the appellant] merely intended the intercalation of this additional claim among her previous claims. Thus, the original allegations in [the appellant's] Answer and Counter-Complaint remain intact.

- 18 -

*Id.*

Likewise, in this case, Plaintiffs intended the amended complaint to serve in addition to their original complaint. Although Plaintiffs failed to explicitly incorporate their initial complaint into their amended complaint, they did reference the trial court's mid-trial order allowing them to amend the complaint in the title of their amended complaint, and they included all the allegations and claims of their initial complaint in the body of their amended complaint. We conclude that Plaintiffs' intent was to amend their complaint to add their claim under the Viatical Settlement Act (as well as a more detailed explanation of their previously claimed damages) to conform to the evidence presented during the first trial session, as the trial court had allowed. *See id.*; *see also Dobbs v. Guenther*, 846 S.W.2d 270, 273 (Tenn. Ct. App. 1992) ("[W]e must always look to the substance of a pleading rather than to its form."). Therefore, for all of the reasons stated above, the trial court did not err in declining to set aside the partial summary judgment order.

Regarding the effect of the partial summary judgment order, Plaintiffs maintain that it settled all questions concerning Mr. Freeman's liability and that only damages remained to be determined at trial. We agree insofar as the order pertained to Mr. Freeman's liability on the claims set forth in Plaintiffs' initial complaint. We note that because the trial court set aside its order dismissing the claims against Mr. Freeman in his role as former trustee of the Ross Trust, summary judgment regarding liability as to these claims remained in place. Furthermore, because the trial court properly treated Plaintiffs' concise statement of material facts as true, and those facts were mirrored by factual allegations in both the initial and amended complaints, the trial court was well within its discretion to treat those factual allegations as true. *See* Tenn. R. Civ. P. 56.03; *Brecker*, 2025 WL 304571, at *8. However, in addition to adding a new claim under the Viatical Settlement Act in their amended complaint, Plaintiffs added factual allegations related to that claim.

We determine that the trial court's partial summary judgment order applied only to the facts and claims set forth in Plaintiffs' original complaint. This meant that Plaintiffs were required to prove Mr. Freeman's liability under the Viatical Settlement Act at trial, as well as any factual averments that were not set forth in Plaintiffs' original complaint. Therefore, in reviewing the trial court's findings and conclusions concerning Mr. Freeman's alleged violations of the Viatical Settlement Act, we will consider whether Plaintiffs proved Mr. Freeman's liability as well as damages.

V. Statutes of Limitations

In its April 2018 order denying Defendants' motions to dismiss, the trial court found that "the six year statute of limitations on contract issues applies in this instance." Mr. Freeman had raised an affirmative defense in his January 2017 motion to dismiss, arguing that Plaintiffs' complaint violated the four-year statute of limitations provided in Tennessee

Code Annotated § 47-2-725 regarding contracts for the sale of goods. Although Mr. Freeman subsequently argued that other statutes of limitations governed the complaint, the trial court maintained its finding in subsequent orders that the six-year statute of limitations provided in Tennessee Code Annotated § 28-3-109(a)(3) concerning "[a]ctions on contracts" applied.

On appeal, Mr. Freeman contends that the trial court erred by declining to find that the following three-year statutes of limitations barred Plaintiffs' claims: (1) tort actions pursuant to Tennessee Code Annotated § 28-3-105(1), (2) judicial proceedings against a trustee for breach of trust pursuant to Tennessee Code Annotated § 35-15-1005(c), and (3) Tennessee Viatical Settlement Act claims by operation of Tennessee Code Annotated § 28-3-105(3) regarding violations of a state statute. Mr. Freeman states that as a "legal issue," "the nature of this action and the applicable statute of limitations" "has existed since the inception of this action." Although this description is not entirely accurate, we agree that Mr. Freeman did raise all three statutes of limitations as affirmative defenses during the proceedings before the trial court.

Mr. Freeman first raised the statute of limitations for tort claims as an affirmative defense in his answer filed on April 8, 2019, reiterating it in his October 1, 2019 amended answer and in his January 9, 2020 motion to dismiss Plaintiffs' amended complaint. Mr. Freeman raised the affirmative defense of the statute of limitations for actions against trustees in his second amended answer to Plaintiffs' initial complaint on October 11, 2019, and again in his January 2020 motion to dismiss. Plaintiffs first asserted their claim under the Viatical Settlement Act in their amended complaint, and Mr. Freeman raised an affirmative defense of untimeliness under the Act in his answer to the amended complaint and again in his January 2020 motion to dismiss. The trial court denied Mr. Freeman's claims that statutes of limitations other than the six-year contract limitation period applied in its orders denying Mr. Freeman's repeated motions to dismiss pursuant to Tennessee Rule of Civil Procedure 12.02(6).

Regarding a Rule 12.02(6) motion to dismiss based on a statute of limitations, our Supreme Court has explained:

A Tenn. R. Civ. P. 12.02(6) motion tests only the legal sufficiency of the plaintiff's complaint, not the strength of the plaintiff's proof. *Highwoods Props., Inc. v. City of Memphis*, 297 S.W.3d 695, 700 (Tenn. 2009). Thus, courts ruling on a Tenn. R. Civ. P. 12.02(6) motion "'must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences.'" *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011) (quoting *Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 31-32 (Tenn. 2007)). The determination of whether a suit should be dismissed based on the statute of limitations presents a question of law which we review de novo with no

- 20 -

presumption of correctness. *Fahrner v. SW Mfg., Inc.*, 48 S.W.3d 141, 144 (Tenn. 2001).

\* \* \*

A defense predicated on the statute of limitations triggers the consideration of three components—the length of the limitations period, the accrual of the cause of action, and the applicability of any relevant tolling doctrines. All of these elements are inter-related and, therefore, should not be considered in isolation.

*Redwing*, 363 S.W.3d 436 at 455-56. We will review each of the statutes of limitations posited by Mr. Freeman in turn.

### A. Contract versus Tort

Mr. Freeman contends that Plaintiffs' claims are governed by the three-year statute of limitations applicable to torts rather than the six-year statute of limitations applicable to contracts. He specifically argues that (1) there was "no contract or other agreement" between Mr. Freeman and Plaintiffs, (2) the allegations Plaintiffs set forth in their complaint and amended complaint described the torts of fraud and misrepresentation, and (3) Plaintiffs' claimed injuries were to personal property and were therefore recoverable under tort theories. Mr. Freeman thereby argues that because Ms. Younger discovered the value of the Policy more than three years prior to filing this action, the action was time barred. Plaintiffs respond that the contractual agreement at issue was Defendants' agreement to sell the Policy directly to the Younger Family Trust and that the agreement was breached when Mr. Freeman and Mr. Garrison created the Ross Trust and transferred the Policy to it.

The trial court found applicable the statute of limitations provided in Tennessee Code Annotated § 28-3-109(a)(3) (West 1950 to current), which states that "[a]ctions on contracts not otherwise expressly provided for" "shall be commenced within six (6) years after the cause of action accrued." Mr. Freeman posits that the court should have found applicable the statute of limitations provided in Tennessee Code Annotated § 28-3-105(1) (West July 1, 2024, to current), which states that "[a]ctions for injuries to personal or real property" "shall be commenced within three (3) years from the accruing of the cause of action." As the *Redwing* Court instructed:

The choice of the correct statute of limitations is made by considering the "'gravamen of the complaint.'" *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006) (quoting *Gunter v. Lab. Corp. of Am.*, 121 S.W.3d 636, 638 (Tenn. 2003)). In common parlance, this rather elliptical phrase refers to the "substantial point," the "real purpose," or the "object" of the complaint.

*Estate of French v. Stratford House*, 333 S.W.3d 546, 557 (Tenn. 2011) (quoting *Black's Law Dictionary* 770 (9th ed. 2009)) ("substantial point"); *Bland v. Smith*, 197 Tenn. 683, 686, 277 S.W.2d 377, 379 (1955) ("real purpose"); *Bodne v. Austin*, 156 Tenn. 353, 360, 2 S.W.2d 100, 101 (1928) ("object"), *overruled on other grounds by Teeters v. Currey*, 518 S.W.2d 512, 517 (Tenn. 1974). It does not involve the "designation" or "form" of the action. *Pera v. Kroger Co.*, 674 S.W.2d 715, 719 (Tenn. 1984) ("designation"); *Callaway v. McMillian*, 58 Tenn. (11 Heisk.) 557, 559 (1872) ("form"). Determining the "gravamen of the complaint" is a question of law. *Gunter v. Lab. Corp. of Am.*, 121 S.W.3d at 638.

*Redwing*, 363 S.W.3d at 457.

Our Supreme Court has further held that "alternative claims may well be subject to differing statutes of limitations" and that "in choosing the applicable statute of limitations, courts must ascertain the gravamen of each claim, not the gravamen of the complaint in its entirety." *Benz-Elliott v. Barrett Enters., LP*, 456 S.W.3d 140, 148-49 (Tenn. 2015). The *Benz-Elliott* Court clarified that a two-step approach of (1) "consider[ing] the legal basis of the claim" and (2) "then consider[ing] the type of injuries for which damages are sought" "is the correct framework for courts to employ when ascertaining the gravamen of a claim for the purpose of choosing the applicable statute of limitations." *Id.* at 151.

To determine the legal basis of Plaintiffs' claims, we begin with the allegations in their initial complaint. Plaintiffs averred that the "intent of the parties at the time of this transaction . . . was for [the Policy] to be sold and transferred to the [Younger Family Trust]." They presented two checks as exhibits to the complaint, both written by Mr. Younger and delivered to Mr. Garrison, the first in the amount of $20,000.00 with the memo line, "Ross Ins. Deal," and the second in the amount of $205,000.00. Plaintiffs alleged:

> Rather than transferring [the Policy] upon receipt of these funds, and <u>in violation of the agreement between the Parties</u>, to [the Younger Family Trust], the Defendants, each and all of them, conspired and committed a fraudulent scheme to convey [the Policy] to a new Trust, [the Ross Trust].

(Emphasis added.) Plaintiffs asserted that Defendants failed to disclose the true value of the Policy "in violation of the contract agreement between the Parties, while in a convoluted and dedicated scheme to commit fraud." They alleged that the "fraud in this matter was intentional, a conspiracy between the Defendants . . . and was a violation of the agreement and contract between the Parties." In the conclusion of their complaint, Plaintiffs requested a judgment "upon a specific finding of [breach] of contract, fraud, unjust enrichment or any other theory of obligation of the Defendants upon discovery of this cause."

- 22 -

In their amended complaint, Plaintiffs repeated the above allegations and asserted their original claims plus a new allegation, sounding in contract, that Defendants had violated the implied contract of good faith and fair dealing. Plaintiffs then asserted an additional claim under the Viatical Settlement Act, averring in part that "Defendants did not supply a 'contract form' although the documents produced by Defendant Freeman refer to a 'contract.'" *See* Tenn. Code Ann. § 56-50-105 (West August 17, 2009, to current) ("A person shall not use a viatical settlement contract form or provide to a viator a disclosure statement form in this state unless first filed with and approved by the commissioner."). Additionally, Plaintiffs alleged that Mr. Freeman knew that Mr. Garrison was a convicted felon and "enabled" Mr. Garrison to commit fraud by stealing $44,272.71 from the Policy while Mr. Garrison was acting as trustee of the Ross Trust. In the initial complaint, this allegation had included only Mr. Garrison's actions and had not directly implicated Mr. Freeman.

"The essential elements of any breach of contract claim include (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *Bynum v. Sampson*, 605 S.W.3d 173, 180 (Tenn. Ct. App. 2020) (quoting *ARC Lifemed, Inc. v. AMC-Tenn., Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)). We emphasize that in reviewing Mr. Freeman's Rule 12.02(6) motions to dismiss, the trial court was required to "'construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences.'" *Redwing*, 363 S.W.3d at 456 (quoting *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011)).

Mr. Freeman argues that there was "no contract or other agreement by Freeman with [Plaintiffs] to cause this matter to be a sworn account under the applicable statute."[11] He maintains that for Tennessee Code Annotated § 28-3-109(a) to apply, "there would have to [be] an account/contract at issue." However, Plaintiffs' complaint and amended complaint clearly state facts averring a contractual agreement between Plaintiffs and Defendants, including Mr. Freeman, to sell the Policy directly to the Younger Family Trust. Although Plaintiffs did not allege a written contract between the Younger Family Trust and Mr. Freeman, they did allege that the evidence would demonstrate a contractual agreement between Plaintiffs and Defendants to sell the Policy to the Younger Family Trust. Plaintiffs further alleged that all Defendants were acting in concert, including Mr. Freeman in his roles as the agent drafting and delivering Policy transfer documents and as the trustee of the Ross Trust, to transfer the Policy instead to the Ross Trust with a failure to disclose the Policy's true value to Plaintiffs.

---

[11] Mr. Freeman also argues that the lack of a creditor-debtor account between Plaintiffs and Defendants meant that Plaintiffs could not establish the contract they claimed. However, in the preceding section of this Opinion, we have determined that Plaintiffs' use of the term, "sworn account," in the title and damages request of their complaint did not require them to prove a creditor-debtor account.

As this Court has explained regarding types of contracts:

Generally, contracts can be either express, implied in fact, or implied in law. Express contracts and contracts implied in fact result from a meeting of the minds of the contracting parties; the parties mutually assent to the contract's terms. *See Whitmore v. Jones*, No. 02A01-9901-CV-00002, 1999 WL 455433, at *3, 1999 Tenn. App. LEXIS 430, at *7-*8 (Tenn. Ct. App. July 2, 1999) (citing *Johnson v. Central Nat'l Ins. Co. of Omaha*, 210 Tenn. 24, 356 S.W.2d 277, 281 (App. 1962)). In order to be enforceable, such contracts must be sufficiently definite and must be based on consideration. *Id.* The primary difference between an express contract and a contract implied in fact is the manner in which the parties manifest their assent. 7 Tenn. Am. Jur. 2d *Contracts* § 98 (1997). In an express contract, the parties assent to the terms of the contract by means of words, writings, or some other mode of expression. *See Computer Shoppe, Inc. v. State*, 780 S.W.2d 729, 735 (Tenn. Ct. App. 1989). In a contract implied in fact, the conduct of the parties and the surrounding circumstances show mutual assent to the terms of the contract. *See Angus v. City of Jackson*, 968 S.W.2d 804, 808 (Tenn. Ct. App. 1997).

In contrast, contracts implied in law "are created by law without the assent of the party bound, on the basis that they are dictated by reason and justice." *Id.* The Tennessee Supreme Court has recognized that contracts implied in law are also discussed in terms of unjust enrichment, quasi contract, and quantum meruit:

Actions brought upon theories of unjust enrichment, quasi contract, contracts implied in law, and quantum meruit are essentially the same. Courts frequently employ the various terminology interchangeably to describe that class of implied obligations where, on the basis of justice and equity, the law will impose a contractual relationship between the parties, regardless of their assent thereto.

*Paschall's, Inc. v. Dozier*, 219 Tenn. 45, 407 S.W.2d 150, 154 (1966) . . . ; *see also Whitehaven Cmty. Baptist Church v. Holloway*, 973 S.W.2d 592, 596 (Tenn.1998) (stating that "[u]njust enrichment is a quasi-contractual theory under which a court may impose a contractual obligation on the parties where one does not otherwise exist"). In order to establish a claim based on this type of contract, the plaintiff must show that (1) a benefit has been conferred upon the defendant; (2) the defendant appreciated the benefit; and (3) acceptance of the benefit under the circumstances would

make it inequitable for the defendant to retain the benefit without paying the value of the benefit.  *Angus*, 968 S.W.2d at 808 (quoting *Paschall's*, 407 S.W.2d at 155).

*River Park Hosp., Inc. v. BlueCross BlueShield of Tenn., Inc.*, 173 S.W.3d 43, 57-58 (Tenn. Ct. App. 2002) (emphasis omitted).

We agree with Mr. Freeman that he did not enter into an express contract with the Younger Family Trust and that one was not alleged by Plaintiffs.  However, Plaintiffs did allege a contract implied in fact, evinced by the alleged "conduct of the parties and the surrounding circumstances show[ing] mutual assent to the terms of the contract."  *See id.* at 57.  In its final judgment, the trial court determined:  "The only intent ever expressed by any of the witnesses was that the Younger Family Trust was to purchase the life insurance policy on Mr. Ross, not the proceeds of the Evelyn Ross Trust."  Mr. Freeman's actions in drafting the documents surrounding the sale of the Policy, delivering the documents for Ms. Ross to execute in August 2012, and creating the Ross Trust with himself designated as the trustee and the Younger Family Trust as the beneficiary in the Ross Trust Agreement all implicated his participation in a contract implied in fact to sell the Policy.  Additionally, Plaintiffs asserted an alternate theory of unjust enrichment, which would have been a basis for a court to find a contract implied in law.  *See River Park Hosp.*, 173 S.W.3d at 57.

Mr. Freeman contends that Plaintiffs' allegations describe the torts of fraud and misrepresentation.  Although we agree that Plaintiffs alleged that Defendants had committed fraud, we determine that Plaintiffs alleged fraud as the method by which Defendants breached the agreement between Plaintiffs and Defendants to sell the Policy to the Younger Family Trust.  In support of his argument, Mr. Freeman relies heavily on our Supreme Court's decision in *Vance v. Schulder*, 547 S.W.2d 927 (Tenn. 1977).  We find *Vance* to be factually distinguishable from the instant action.  In *Vance*, the plaintiff alleged that he had been fraudulently induced to sell his ten-percent interest in a corporation by the defendant stockholders.  *Vance*, 547 S.W.2d at 928-29.  Affirming the intermediate court's ruling that the action had been barred by the three-year statute of limitations applicable to fraud, the *Vance* Court determined that "the gravamen of the present case is fraud in the inducement of a contract, the old common law action of deceit."  *Id.* at 931.

However, in the instant action, Plaintiffs did not allege fraudulent inducement to enter a contract; instead, they alleged that they had entered into an agreement with Defendants for the sale of the Policy to the Younger Family Trust and that Defendants had then breached that agreement through sale of the Policy to the Ross Trust instead.  Although Plaintiffs also alleged Defendants' failure to disclose the diminished value of the Policy, sale of the Policy for its full value was part of the alleged contractual agreement.  In this situation, Plaintiffs' fraud allegations are so bound to their breach of contract allegations that it becomes difficult to separate breach of contract and fraud as alternative claims.  Although it is a close question, we determine that the legal basis of Plaintiffs' action was

that Defendants had breached the contractual agreement to sell the Policy for its full value directly to the Younger Family Trust.

Having determined the legal basis of Plaintiffs' action, our next step is to consider "the type of injuries for which damages are sought." *See Benz-Elliott*, 456 S.W.3d at 151. In both their initial and amended complaints, Plaintiffs requested total damages in the amount of $473,581.37 plus attorney's fees pursuant to a provision in the Ross Trust. In their initial complaint, Plaintiffs delineated their requested damages as follows:

> The amount sought in this Complaint, from all Defendants, is the difference between the value of the policy claimed at the sale in August 2012, $1,000,000.00 and its actual[] value at that time, $633,705.91, due to the reduced face value in 2003 and the loans against cash value, the money taken by fraud by Defendant Garrison, $44,272.71, plus the interest paid by the Plaintiffs to keep the policy in force due to the cash loans, $63,014.57.

Mr. Freeman asserts that Plaintiffs have sought "recovery for torts for property damages, i.e., loss of monies due to alleged acts or omissions" of Defendants. To the contrary, we determine that as in *Benz-Elliott*, "the type of injuries for which [the plaintiff] sought to recover resulted from the breach of contract." *See id.* at 152. Here, Plaintiffs have sought the value of what they alleged the original contract with Defendants was for – a one million dollar life insurance policy. Although they alleged that Mr. Garrison had committed fraud in taking $44,272.71 as the purported trustee of the Ross Trust, and that Mr. Freeman had enabled him to do so, they were nonetheless seeking the original contract amount. *See id.* ("Although diminution in value damages may be recovered for both tort and contract claims, the diminution in value damages [the plaintiff] sought to recover flowed directly from her breach of contract claim.") (footnote omitted). The trial court awarded the damages sought by Plaintiffs as the full value of the Policy for which they bargained.[12]

We therefore conclude that the trial court did not err in finding that Plaintiffs' initial complaint was governed by the six-year statute of limitations provided in Tennessee Code Annotated § 28-3-109(a)(3) for contract actions and did not abuse its discretion in denying Mr. Freeman's motions to dismiss based on this issue. Given that Plaintiffs filed their

---

[12] Mr. Freeman also argues that the trial court's finding of joint and several liability among Defendants demonstrated that the court was treating this case as a tort action. Mr. Freeman states: "To have joint and several damages, a tort is required." Mr. Freeman provides no authority for this statement, and we find his argument unavailing. Defendants to a breach of contract action may be found joint and severally liable in certain circumstances. *See, e.g.*, *Resolution Tr. Corp. v. Block*, 924 S.W.2d 354, 357 (Tenn. 1996); *Baron Constr., LLC v. 4J Constr. Co.*, No. M2022-00412-COA-R3-CV, 2024 WL 748790, at *7 (Tenn. Ct. App. Feb. 23, 2024). We will address Mr. Freeman's argument regarding whether the trial court properly imposed joint and several liability within a subsequent section of this Opinion concerning damages.

initial complaint in November 2016 and the transaction at issue occurred in August 2012, Plaintiffs' breach of contract claim was not time barred.

### B. Mr. Freeman as Former Trustee

Mr. Freeman contends that the trial court erred by declining to dismiss "any claim" brought against him as former trustee of the Ross Trust because such a claim was allegedly time barred by the three-year statute of limitations provided in Tennessee Code Annotated § 35-15-1005(c). He avers that his resignation as trustee was "effective" October 31, 2012, when he gave notice to Mr. Younger, Ms. Younger, and Lincoln that he was resigning effective November 1, 2012, and that Mr. Garrison would become the new trustee.

Tennessee Code Annotated § 35-15-1005(c) (West July 1, 2025, to current) provides in pertinent part:

> [A] judicial proceeding against a trustee, former trustee, trust advisor, or trust protector for breach of trust must be commenced within three (3) years after the first to occur of:
>
> (1)     The removal, resignation, or death of the trustee, former trustee, trust advisor, or trust protector;
>
> (2)     The termination of the beneficiary's interest in the trust; or
>
> (3)     The termination of the trust.

"Under subsection (c), the three-year period in which a beneficiary may bring a proceeding against a trustee who left office prior to the termination of a trust begins to run the date that trustee leaves office." *Meyers v. First Tenn. Bank, N.A.*, 503 S.W.3d 365, 386 (Tenn. Ct. App. 2016).[13]

In its March 10, 2020 order initially granting Mr. Freeman's motion to dismiss in part, the trial court directed that "the claim as to Mr. Freeman, as former Trustee shall be dismissed as barred by the applicable statute of limitations against a Trustee based upon his resignation of October 31, 2012 . . . ." Upon Plaintiffs' motion to reconsider, the trial court subsequently set aside the dismissal order, determining that Tennessee Code

---

[13] Tennessee's Trust Code also provides that "[a] trustee may resign . . . [u]pon at least thirty (30) days' notice to the qualified beneficiaries, the settler, if living, and all cotrustees[.]" Tenn. Code Ann. § 35-15-705(a)(1) (West July 1, 2004, to current). No issue has been raised regarding the timeliness of Mr. Freeman's notice of resignation, and his one-day notice does not affect the disposition of this case.

Annotated § 35-15-1005(c) did not bar Plaintiffs' action.[14] The court stated in its May 29, 2020 order:

> The Court finds that Defendant, Freeman, was the trustee of the Evelyn Ross Trust and that he attempted to resign and substitute Defendant, John Garrison, as Trustee in his place on October 31, 2012 by "appointment[."]
>
> The Court having reviewed the Motion and Response to Defendant, Freeman, and the pleadings, exhibits as well as the record as a whole is of the opinion that the substitution of Defendant, Garrison, as substitute trustee was not a power granted to Freeman by the Trust document which Freeman authored and therefore neither his resignation nor his "appointment" of Garrison was valid. As a result, the Court is of the Opinion that [the] Order Dismissing Freeman as former Trustee should be set aside.

Tennessee Code Annotated § 35-15-704(c) (West April 12, 2007, to current) provides:

> A vacancy in a trusteeship of a noncharitable trust that is required to be filled must be filled in the following order of priority:
>
> (1)    By a person designated in the terms of the trust to act as successor trustee;
>
> (2)    By a person appointed by unanimous agreement of the qualified beneficiaries; or
>
> (3)    By a person appointed by the court.

*See In re Estate of Doyle v. Hunt*, 60 S.W.3d 838, 847 (Tenn. Ct. App. 2001) ("[W]e conclude that the [successor trustees] named in [the decedent's] last will and testament should have an opportunity to be heard prior to being superseded [by a court appointee].").

---

[14] In their motion to reconsider and now on appeal, Plaintiffs rely on the trial court's prior grant of partial summary judgment to argue that because Mr. Freeman's liability was settled by the partial summary judgment, any further argument by Mr. Freeman regarding the statute of limitations was untimely. The trial court set aside the dismissal order for another reason, and we find Plaintiffs' argument in this regard unavailing. The partial summary judgment order was interlocutory in nature and was therefore open to revision by the trial court. *See* Tenn. R. Civ. P. 54.02 (providing that a non-final order is "subject to revision at any time before the entry of the judgment adjudicating all the claims and the rights and liabilities of all the parties").

Under a section entitled "Acceptance and Duties of Trustee," the Ross Trust Agreement provides the following regarding substitute trustees:

> The substitute Trustee shall be John C. Garrison. Should he elect not to serve by reason of death, disability or resignation, the substitute Trustee shall be appointed by the primary beneficiary, who has the substitute Trustee rights, powers and duties of the original Trustee hereunder.

The first sentence of this provision plainly states that Mr. Garrison "shall be" the substitute trustee. Appointment of a second substitute trustee would then occur "[s]hould [Mr. Garrison] elect not to serve by reason of death, disability, or resignation." The power of appointment in this provision is granted solely to the primary beneficiary, which, as stated elsewhere in the Ross Trust Agreement, is the Younger Family Trust with Ms. Younger as trustee. The trial court interpreted this provision as failing to grant Mr. Freeman the power to appoint Mr. Garrison as substitute trustee. The court was correct on this point. However, also in this provision, Mr. Garrison was designated as the substitute trustee by the Ross Trust Agreement itself. The last clause in the provision is not a model of clarity, but in essence it states that once a substitute trustee is appointed by the primary beneficiary (upon Mr. Garrison's resignation or inability to serve), that trustee would have the "rights, powers and duties of the original Trustee."[15]

Therefore, according to the Ross Trust Agreement, Mr. Garrison was the substitute trustee once he had accepted the role upon Mr. Freeman's resignation.[16] *See* Tenn. Code

---

[15] On appeal, Mr. Freeman posits for the first time that if he did not have the authority to resign and remained the trustee of the Ross Trust after November 1, 2012, Ms. Younger did not properly become the trustee in turn and therefore did not have standing to file this lawsuit. We deem this argument waived because Mr. Freeman did not raise a standing issue before the trial court. "This Court 'is a court of appeals and errors, and we are limited in authority to the adjudication of issues that are *presented and decided* in the trial courts, and a record thereof preserved as prescribed in the statutes and Rules of this Court.'" *In re Adoption of E.N.R.*, 42 S.W.3d 26, 31-32 (Tenn. 2001) (quoting *Dorrier v. Dark*, 537 S.W.2d 888, 890 (Tenn. 1976)) (emphasis added in *E.N.R.*). Moreover, this argument is unavailing because the Ross Trust Agreement granted the Younger Family Trust, as its primary beneficiary, the power to appoint a trustee in the event of a vacancy.

[16] The trial court's finding that Mr. Freeman had stepped outside the bounds of the power granted to him by "appointing" Mr. Garrison was arguably supported by two exhibits presented at trial. The language of the first amendment to the Ross Trust Agreement states that Mr. Garrison's assumption of responsibilities as the "New Trustee" was "mutually agreed." Given that only Mr. Freeman and Mr. Garrison signed the first amendment, this "agreement" did not include Ms. Ross, who executed the original Ross Trust Agreement, or the Younger Family Trust as the primary beneficiary. Mr. Freeman's notice of the change in trustee, sent to Mr. Younger and Ms. Younger on October 31, 2012, offered them no opportunity to agree or disagree with what Mr. Freeman termed in the notice his "appointment" of Mr. Garrison. Although we must conclude that Mr. Garrison was the substitute trustee of the Ross Trust because of the plain language designating him in the Ross Trust Agreement, we note that Mr. Freeman, who drafted the Ross Trust

Ann. § 35-15-704(c)(1). However, we discern another reason why Plaintiffs' claim against Mr. Freeman as former trustee was not time barred by operation of Tennessee Code Annotated § 35-15-1005(c). The statute applies to "a judicial proceeding against a trustee, former trustee, trust advisor, or trust protector for <u>breach of trust</u>" (emphasis added). A breach of trust is defined as "[a] violation by a trustee of a duty the trustee owes to a beneficiary." Tenn. Code Ann. § 35-15-1001(a) (West July 1, 2004, to current). Although there were elements of a trustee's violation of a trustee's duties involved in the alleged breach of contract, Plaintiffs did not sue on a claim of breach of trust in either their initial or amended complaint.

As we have previously determined, the gravamen of Plaintiffs' action was breach of contract against all Defendants. Therefore, although we do so on a different ground than that found by the trial court, we affirm the trial court's ruling that Plaintiffs' claims against Mr. Freeman as former trustee of the Ross Trust were not time barred by § 35-15-1005(c). *See In re Estate of Trigg*, 368 S.W.3d 483, 502 n.63 (Tenn. 2012) (explaining that an appellate court "may affirm the judgment on grounds different from those relied upon by the lower courts when the lower courts have reached the correct result").

### C. Viatical Settlement Act

Mr. Freeman also contends that the trial court erred by finding that Plaintiffs' claim brought under the Viatical Settlement Act was not time barred. Under the Viatical Settlement Act, a "viator" is defined in part as "the owner of a life insurance policy or a certificate holder under a group policy who resides in this state and enters or seeks to enter into a viatical settlement contract." Tenn. Code Ann. § 56-50-102(21)(A) (West July 10, 2016, to current). Tennessee Code Annotated § 56-50-102(15)(A) defines a "viatical settlement contract" as:

> a written agreement between a viator and a viatical settlement provider establishing the terms under which compensation or anything of value is or will be paid, which compensation or value is less than the expected death benefits of the policy, in return for the viator's present or future assignment, transfer, sale, devise or bequest of the death benefit or ownership of any portion of the insurance policy or certificate of insurance[.]

The Viatical Settlement Act does not include a statute of limitations. Mr. Freeman posits that "[a]s such, the time for bringing these claims must be analyzed under Tenn. Code Ann. § 28-3-105(3)." Tennessee Code Annotated § 28-3-105(3) provides a three-year statute of limitations for "[c]ivil actions based upon the alleged violation of any federal or state statute creating monetary liability for personal services rendered, or liquidated

---

Agreement, was inconsistent with the terms he used in describing the process of installing a substitute trustee.

damages or other recovery therefor, when no other time of limitation is fixed by the statute creating such liability[.]" Mr. Freeman thereby argues that Plaintiffs' Viatical Settlement Act claim in their December 2019 amended complaint was time barred. Plaintiffs respond that § 28-3-105(3) is inapplicable to this action because it applies to torts against property. Upon thorough review, we agree with Plaintiffs on this issue.

In its March 10, 2020 order, the trial court denied Mr. Freeman's motion to dismiss predicated on this issue without explaining its rationale. As Plaintiffs point out, § 28-3-105 is entitled, "Torts; property." *See Original Christ Temple Church v. Alexander & Assocs., Inc.*, No. M2002-02117-COA-R3-CV, 2004 WL 223323, at *4 (Tenn. Ct. App. Feb. 4, 2004) ("T.C.A. § 28-3-105 provides that <u>actions for injuries to personal or real property</u> must be commenced within three years from the accrual of the cause of action.") (emphasis added). Inasmuch as the Viatical Settlement Act is not part of the statutory scheme for torts, we determine that § 28-3-105(3) is inapplicable and does not govern Plaintiffs' claim under the Act. Furthermore, Plaintiffs' action was filed well within the ten-year, catch-all statute of limitations provided by Tennessee Code Annotated § 28-3-110 (a)(3) (West March 20, 2020, to current) for "[a]ll other cases not expressly provided for." The trial court did not abuse its discretion by rejecting Mr. Freeman's motion to dismiss based on the three-year statute of limitations provided in § 28-3-105(3).

Although not included in his issue statement, Mr. Freeman alternatively argues that the trial court erred by finding that the Ross Trust Agreement was a viatical settlement. In support, Mr. Freeman relies solely on his own trial testimony that "[t]his is not a viatical settlement." Mr. Freeman opined in his testimony that Mr. Ross did not qualify as a viator because he was not chronically or terminally ill as those terms are defined by the Viatical Settlement Act. *See* Tenn. Code Ann. § 56-50-102(3), (13). The trial court made an express finding that Mr. Freeman was "not completely credible." *See Jones*, 92 S.W.3d at 838 (explaining that the trial court's determinations regarding witness credibility will not be disturbed on appeal absent clear and convincing evidence to the contrary).

Moreover, the trial court explained its reasoning for discounting Mr. Freeman's testimony on this point in particular. The court stated:

> Mr. Freeman is a licensed insurance representative having many years in the insurance business. Mr. Freeman testified that this was not a viatical settlement because Mr. Ross did not qualify based on his medical records. Mr. Freeman testified that to qualify for a viatical, Mr. Ross would have had to have been terminally ill. This is either a complete misunderstanding of the law or a deliberate attempt to mislead the Court.
>
> Tennessee Code Annotated 50-56-110(a)(5) states prior to or at the time of execution of the viatical settlement contract, the viatical settlement provider shall obtain a witnessed document in which the viator consents to

- 31 -

the viatical settlement contract, represents that the viator has a full and complete understanding of the viatical settlement contract, that the viator has a full and complete understanding of the benefits of the life insurance policy, acknowledges that the viator is entering into the viatical settlement contract freely and voluntarily, and for persons with a terminal or chronic illness or condition acknowledges that the insured has a terminal or chronic illness and that the terminal or chronic illness or condition was diagnosed after the life insurance policy was issued.

TCA 56-50-111(F) provides that, A final order, judgment or decree is entered by a court of competent jurisdiction, on the application of a creditor of the viator, adjudicating the viator bankrupt or insolvent, or approving a petition seeking reorganization of the viator or appointing a receiver, trustee or liquidator to all or a substantial part of the viator's assets;[17] or, Subsection (3), Such other exemptions as may be prescribed by rule.

Therefore, Mr. Ross did qualify as a viator under the statute. . . .

The proof is Mr. Ross was in bankruptcy and a receiver had been appointed to dispose of the assets.

We agree with the trial court. In defining a viator, Tennessee Code Annotated § 56-50-102(21)(A) states that "[f]or the purposes of this chapter, a 'viator' includes, but is not limited to, an owner of a life insurance policy or a certificate holder under a group policy insuring the life of an individual with a terminal or chronic illness or condition" (emphasis added). The owner of the life insurance policy who seeks a viatical settlement does not necessarily have to be chronically or terminally ill. *See* Tenn. Code Ann. § 56-50-102(21)(A), § 56-50-111(a). Furthermore, we determine that the evidence supported the trial court's finding that the Ross Trust Agreement was a viatical settlement.

## VI. Damages

Mr. Freeman contends that the trial court erred by awarding to Plaintiffs a joint and several judgment against Mr. Freeman and other defendants in the amount of $684,861.13. Although Mr. Freeman again argues that Plaintiffs' action was grounded in tort rather than contract, we have determined in a preceding section of this Opinion that the gravamen of Plaintiffs' action was breach of contract. Therefore, Mr. Freeman's argument regarding tort damages is pretermitted as moot. Three of Mr. Freeman's challenges to the damages

---

[17] The trial court was quoting Tennessee Code Annotated § 56-50-111(a)(2)(F), which is one of the five conditions (exceptions) that allows a person "to enter into a viatical settlement contract at any time prior to the application or issuance of a policy that is the subject of [a] viatical settlement contract or within a period of time established by rule." A viator's chronic or terminal illness is also one of the conditions (exceptions). *See* Tenn. Code Ann. § 56-50-111(a)(2)(A).

- 32 -

judgment remain, namely whether the trial court erred by finding that: (1) Plaintiffs carried their burden to prove their claimed damages, (2) joint and several damages against Defendants were appropriate, and (3) Plaintiffs were entitled to attorney's fees. We will address each argument in turn.

## A. Proof of Damages

The trial court found that Plaintiffs had "met their burden of proof" and were "entitled to a judgment" against all Defendants, except Ms. Ross listed as trustee, for the full amount of damages requested. Mr. Freeman asserts that the damages award "repays [Plaintiffs] for a bad gambling result that they knew existed in acquiring the policy" and provides Plaintiffs with a "windfall and reimbursement." He alleges that the trial court failed to adequately consider whether in 2012, Ms. Younger neglected her duty as trustee of the Younger Family Trust to investigate the Policy fully before submitting payments to Mr. Garrison. Plaintiffs respond that they presented proof of all damages claimed and that the trial court properly "placed the Plaintiffs exactly back where they financially should have been" if Defendants had not breached the agreement to sell a million dollar insurance policy to Plaintiffs.

As this Court has elucidated:

> The purpose of assessing damages in breach of contract cases is to place the plaintiff as nearly as possible in the same position she would have been in had the contract been performed, but the nonbreaching party is not to be put in any better position by recovery of damages for the breach of the contract than he would have been if the contract had been fully performed.

*Lamons v. Chamberlain*, 909 S.W.2d 795, 801 (Tenn. Ct. App. 1993). Concerning the review of a damages award for breach of contract, this Court has explained:

> Determinations concerning the amount of damages are factually driven. Thus, the amount of damages to be awarded in a particular case is essentially a fact question. However, the choice of the proper measure of damages is a question of law to be decided by the court.

*BancorpSouth Bank, Inc. v. Hatchel*, 223 S.W.3d 223, 228 (Tenn. Ct. App. 2006) (quoting *Beaty v. McGraw*, 15 S.W.3d 819, 827 (Tenn. Ct. App. 1998)). Therefore, whether Plaintiffs sufficiently proved the damages they incurred is a matter of fact, which we review *de novo* "presuming those findings to be correct unless the preponderance of the evidence is otherwise," and whether the trial court properly chose joint and several damages is a matter of law, which we review *de novo* "without affording a presumption of correctness to the trial court's legal conclusions." *BancorpSouth Bank*, 223 S.W.3d at 228.

In their amended complaint, Plaintiffs requested the same amount of damages as they had in their initial complaint, but they added more detailed information regarding what they termed "categories" of damages and related allegations as follows:

a.    The fact that this was not a $1,000,000.00 policy but one that had been reduced in 2003 to a policy of $859,816.00. That difference is $140,184.00 and was not disclosed to the Plaintiffs.

b.    The fact that $196,389.87 had been taken by cash value loans by the date of 7/1/2012 and that this was not revealed to the Plaintiffs.

c.    The fact that after Defendant Garrison was "given" the Trustee position by Defendant Freeman, as enabled by the actions of Defendants Mr. & Mrs. Ross, Garrison borrowed another $12,000.00 loan and also failed to pay interest and premiums that were due on the policy that had been supplied to him by the Plaintiffs. This resulted in the Plaintiffs having to pay off a total loan of $221,683.10 which included Automatic Premium Loans (APL). In addition, one payment to Defendant Garrison was made twice, an amount of $14,552.49, and was not returned to the Plaintiffs. Defendants Mr. & Mrs. Ross, and Defendant Freeman, by their actions, put Defendant Garrison in this position of authority, and they are vicariously liable for Defendant Garrison's actions.

d.    The fact that the Plaintiffs were forced to maintain loan interest payments in 2013 in the amount of $14,552.49, in 2014 in the amount of $7,839.77, in 2015 in the amount of $16,741.09, in 2016 in the amount of [$]16,541.17 in addition to the loan payoff in 2016 resulted in another $55,674.52 in damages [interest on loans the Plaintiffs did not receive].

Plaintiffs also requested reasonable attorney's fees and costs pursuant to a provision of the Ross Trust Agreement.

Regarding Plaintiffs' proof of these damages, the trial court found in relevant part:

In April of 2012, Mr. Freeman received a fax from Lincoln Financial showing the death benefit of $859,816.00 and a loan balance of $186,386.37. Mr. Freeman's agreement with the Rosses was for a fee of 15 percent of the sale price.

Mr. Freeman learned on July 20th, 2012, that Mr. Ross had transferred the policy to his wife and knew that he was going to do that prior to the

transfer, yet, he went forward with selling a policy that he had no contract to sell. He testified that he did not have a fee agreement with Mrs. Ross. He also testified that the Rosses did not know that he received $50,000.00 from Mr. Garrison instead of the 15 percent that Mr. Ross was to pay him and did not pay him.

When he created the Evelyn Ross Irrevocable Life Insurance Trust, Mr. Freeman wrote the policy was an initial value of $1 million. He admitted that the trustee would have control of the policy proceeds, not the Younger Family Trust.

Ms. Tracy Younger testified that she was intimately involved in the transactions regarding the purchase of the policy. She testified that she could not fully complete her due diligence because she was never sent the documents that allowed her to do so and that the only thing they ever received was documentation on Mr. Ross' health.

She never received a complete copy of the Evelyn Ross Trust with Exhibit A, which was produced in discovery in this case, and never received any communication from Mr. Freeman or Mr. Garrison regarding that. The first indication that she had that the policy had any loans against it and that there was interest due was in January of 2013 when she received the documentation.

The Younger Family Trust had to pay interest payments in the amount of $55,674.52 to protect the policy and their investment. The Younger Family Trust sent checks to John Garrison as trustee in 2013 and 2014 to pay the annual premiums and interest, but he did not make those payments.

The Court's determination is that it was the intent of the parties that the Younger Family Trust purchase the life insurance policy on the life of Mike Ross with a face value of $1 million. It was never communicated to the Younger Family Trust that the loans had been taken out against the policy, thereby, reducing the amount of the policy. The Younger Trust never received any documentation allowing them to complete their due diligence. Clearly, Mr. Ross transferred the policy to Mrs. Ross in July of 2012 knowing that he had entered into an agreement with Mr. Freeman to sell that policy.

The only intent ever expressed by any of the witnesses was that the Younger Family Trust was to purchase the life insurance policy on Mr. Ross, not the proceeds of the Evelyn Ross Trust. There is no credible proof in the record that the Court can find that the Younger Family Trust ever was aware

that the policy had been reduced as a result of the loans or that they knew that the policy had been transferred to the Evelyn Ross Irrevocable Trust prior to their purchase.

Based on everything that the Court has found, the Court has already determined that a judgment as to liability against Defendants Freeman, Garrison, and Mike Ross, the Court finds that this was a viatical settlement under the viatical settlement statute and that the viatical settlement statute was violated in multiple ways.

The Court finds that the Younger Family Trust is an intended beneficiary of the Evelyn Ross Irrevocable Trust, that the Younger Family Trust never received the disclosures required by the viatical settlement statute, that the Evelyn Ross Irrevocable Trust was prepared by Mr. Freeman for the Rosses, and that it is to be construed against them, and it states that this agreement contains the entire agreement by and between the parties hereto with regard to the subject matter herein and supersedes and cancels any and all other agreements, oral or written, made or entered into, prior to or contemporaneous with the execution thereof. Therefore, the Evelyn Ross Irrevocable Trust contains the entirety of its agreement and cannot be altered or amended or changed by parol[] evidence.

The Court, in reviewing the testimony of the witnesses, in light of the credibility determinations that have been previously made, is of the opinion that all of the Defendants entered into a common scheme to defraud the Plaintiffs thereby coming into this court with unclean hands.

The Court's opinion is that the Plaintiffs have met their burden of proof, and the Plaintiffs are entitled to a judgment against the Defendants, jointly and severally, with the exception of Mrs. Ross listed as trustee, in the amount of $418,450.87, plus attorney's fees of $252,867.19, and court costs.

Upon thorough review, we conclude that the evidence preponderates in favor of the trial court's findings. Mr. Freeman argues that Plaintiffs should not recover the full amount of the damages they requested because Ms. Younger failed to take action to minimize the loss to the Younger Family Trust. We disagree. Concerning the loan interest payments, Ms. Younger testified that in 2015 and 2016, after she had become trustee of the Ross Trust, the Lincoln statements came directly to her, and she, as trustee of the Younger Family Trust, made the interest payments on the loans previously taken out by the Rosses: a total of $55,674.52 for those two years. Ms. Younger further testified that to avoid further loss, the Younger Family Trust paid off a total of $221,776.38 in loans taken out by the Rosses and Mr. Garrison against the Policy. Plaintiffs presented documentation of this payoff, including October 2016 letters from Lincoln demonstrating the payoff amount and

a subsequent zero balance after the Younger Family Trust had paid it. While finding Mr. Freeman to be "more credible than Mr. Garrison but not completely credible," the trial court found Ms. Younger "to be the most credible of the witnesses who has testified in this trial." *See Jones*, 92 S.W.3d at 838 ("This Court accords deference to the trial court's determinations regarding credibility.")

### B. Joint and Several Liability

Mr. Freeman asserts that the trial court erred by apportioning joint and several liability upon a determination of breach of contract and erred by holding Mr. Freeman liable for acts committed solely by Mr. Garrison. Mr. Freeman states: "It is undisputed that Garrison took monies from the Trust for his own benefit but no one else's benefit." Plaintiffs respond that all Defendants bore responsibility for Mr. Garrison's actions, noting that Mr. Freeman drafted the Ross Trust Agreement to place Mr. Garrison as substitute trustee despite Mr. Freeman's alleged knowledge that Mr. Garrison was a convicted felon. Plaintiffs emphasize that the trial court's grant of partial summary judgment established liability against Mr. Freeman, Mr. Garrison, and Mr. Ross.

Contrary to Mr. Freeman's argument that joint and several liability may only be apportioned in tort actions, defendants to a breach of contract action may be found jointly and severally liable in certain circumstances. *See, e.g.*, *Resolution Tr. Corp. v. Block*, 924 S.W.2d 354, 357 (Tenn. 1996) ("In an action for damages by or on behalf of a corporation against the officers and directors of the corporation in which the officers and directors are found to be liable as the result of their <u>collective</u> breach of fiduciary duty, negligence, <u>or breach of contract</u>, the liability of the defendants to the corporation is joint and several.") (emphasis added); *Baron Constr., LLC v. 4J Constr. Co.*, No. M2022-00412-COA-R3-CV, 2024 WL 748790, at *7 (Tenn. Ct. App. Feb. 23, 2024) (affirming a joint and several judgment for breach of contract against two corporations and their common owner); *Buffington v. Legacy & Exit Planning LLC*, No. W2016-00315-COA-R3-CV, 2017 WL 1240155, at *13 (Tenn. Ct. App. Mar. 31, 2017) (affirming the trial court's apportionment of joint and several liability to two corporations that were collectively responsible under the breached contract to make payments to the plaintiff despite a history of payments originating with one of the corporations in the past).[18]

According to the trial court's grant of partial summary judgment, all Defendants, except Ms. Ross listed as trustee, were found liable for the allegations set forth in Plaintiffs' initial complaint. Moreover, the court found Defendants to have entered into a "common scheme" and to be collectively responsible for the breach of contract and damages incurred

---

[18] Additionally, Tennessee Code Annotated § 29-11-107(f) (West July 1, 2013, to current) provides, as an exception to liability under comparative fault principles, that "[t]his section shall not prevent parties from entering into a legally enforceable contract that allocates fault in a civil action among the parties to the contract."

by Plaintiffs.  As the court found, Mr. Freeman drafted the Ross Trust Agreement, placing Mr. Garrison in the position of substitute trustee and giving him access to trust funds despite Mr. Garrison's history as a convicted felon.  The trial court did not err by apportioning joint and several liability to Defendants.

## C.  Attorney's Fees

Mr. Freeman contends that under the American Rule regarding attorney's fees, there was no basis for the trial court's award of attorney's fees because there was "no contract for fees to be awarded against [him]."  Plaintiffs respond that the trial court properly found a contractual basis for the award of attorney's fees in the Ross Trust Agreement.  Regarding the American Rule and attorney's fee awards, our Supreme Court has explained:

> This Court has adhered strictly to the guiding principle that the American rule, prohibiting an award of attorney fees, will apply unless a contract specifically and expressly creates a right to recover "attorney fees" or some other recognized exception to the American rule is present.  *See, e.g.*, *Pullman Standard* [*v. Abex Corp.*], 693 S.W.2d [336,] 338 [(Tenn. 1985)].  The only way parties to a contract have been able to specifically and expressly create a right to recover attorney fees has been by incorporating the phrase "including reasonable attorney fees" or some other similar, yet equally specific, contractual language.  *Compare Brunswick Acceptance Co. v. MEJ, LLC*, No. E2007-01819-COA-R3-CV, 2008 WL 4648350, at *7 (Tenn. Ct. App. Oct.21, 2008) (app. for perm. app. denied Apr. 27, 2009) (upholding an award of attorney fees where the contractual language provided for the recovery of "all costs and expenses, including reasonable attorney's fees, incurred in enforcing the agreement"), and *ABC Painting Co. v. White Oaks Apartments of Hermitage*, No. M2006-00280-COA-R3-CV, 2007 WL 14250, at *5 (Tenn. Ct. App. Jan. 2, 2007) (upholding an award of attorney fees where the contractual language provided for "all costs and expenses of any legal action . . . including but not limited to, reasonable attorney's fees"), with *Kultura* [*v. S. Leasing Corp.*], 923 S.W.2d [536,] 540 [(Tenn. 1996)] (holding that the term "any loss" does not include an award for attorney fees), and *Holcomb* [*v. Cagle*], 277 S.W.3d [393,] 397 [(Tenn. Ct. App. 2008)] (holding that the contractual language to hold plaintiffs harmless from "any cost, loss, damage, or expense arising solely out of any failure of the Tenant to comply with any of the requirements or provisions of th[e] Ground Lease" did not explicitly provide for the recovery of attorney fees incurred in enforcing its provisions).

> Accordingly, if the parties intend to create contractually a right to recover attorney fees, the contractual language must specifically and expressly articulate this intent and not merely provide for recovery of "costs

and expenses." Adhering to this bright-line rule provides certainty in contracting and is warranted by the public policy considerations supporting the American rule. *See House* [*v. Estate of Edmondson*], 245 S.W.3d [372,] 377 [(Tenn. 2008)].

*Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009). The interpretation of a contract is a question of law, which we review *de novo* with no presumption of correctness accorded. *Id.* at 310-11.

The trial court here found that Mr. Freeman was bound by the provisions of the Ross Trust Agreement, which he drafted and entered into as the original trustee of the Ross Trust. The Ross Trust Agreement contains the following fee-shifting provision labeled "Attorney's Fees and Expenses":

> If any dispute shall arise between the parties hereto with regard to this Agreement, the prevailing party therein shall be entitled to reimbursement by the other party hereto for all costs, expenses and reasonable Attorney's fees incurred by the prevailing party in connection therewith or as a result thereof.

This provision clearly calls for the "prevailing party" in any dispute "between the parties hereto" to be reimbursed for "all costs, expenses and reasonable Attorney's fees." Mr. Freeman's challenge to the attorney's fees award rests upon his assertion that neither Ms. Younger nor the Younger Family Trust was a party to the Ross Trust Agreement. Plaintiffs counter that they "did not want the Evelyn Ross Trust" but that "as an intended beneficiary they certainly had the right to enforce its terms."

Mr. Freeman and Ms. Ross (who is identified in the Agreement as the "Settlor" of the Ross Trust) were the signatories to the Ross Trust Agreement, and thus were parties to the Agreement. However, a third-party beneficiary may also be entitled to enforce a contract. *See Elvis Presley Enters., Inc. v. City of Memphis*, No. W2019-00299-COA-R3-CV, 2022 WL 854860, at *12 (Tenn. Ct. App. Mar. 23, 2022) ("A 'non-party who wishes to enforce a contract has the burden of proving that he is entitled to recover as a third-party beneficiary.'" (quoting *McPherson v. Shea Ear Clinic*, No. W2006-01936-COA-R3-CV, 2007 WL 1237718, at *4 (Tenn. Ct. App. Apr. 27, 2007))). "Under the modern rule, third parties may enforce a contract if they are intended beneficiaries of the contract." *Owner-Operator Indep. Drivers Ass'n, Inc. v. Concord EFS, Inc.*, 59 S.W.3d 63, 68 (Tenn. 2001). As our Supreme Court has instructed:

> A third party is an intended third-party beneficiary of a contract, and thus is entitled to enforce the contract's terms, if
>
> > (1)    The parties to the contract have not otherwise agreed;

> (2) Recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties; and
>
> (3) The terms of the contract or the circumstances surrounding performance indicate that either:
>
> > (a) the performance of the promise will satisfy an obligation or discharge a duty owed by the promisee to the beneficiary; or
> >
> > (b) the promisee intends to give the beneficiary the benefit of the promised performance.

*Owner-Operator Indep. Drivers*, 59 S.W.3d at 70.

The Ross Trust Agreement contains the following "Designation of Beneficiaries":

> The Settlor, hereby irrevocably designates the amount of 100% of the proceeds of this Trust to, The Edward Jackson Younger Family Irrevocable Trust Agreement, dated May 23, 1994, Tax ID# . . . Angela Tracy Younger, Trustee [address].

Applying the above test, we conclude that the Younger Family Trust, with Ms. Younger as trustee, was an intended third-party beneficiary of the Ross Trust Agreement. *See Owner-Operator Indep. Drivers*, 59 S.W.3d at 70. The Agreement clearly designates the proceeds of the Ross Trust to be paid to the Younger Family Trust, and the document contains no agreement between the signatories to the contrary. *See id.* Furthermore, the Ross Trust Agreement states elsewhere that the "beneficiaries agree" to various provisions. For instance, "[t]he primary beneficiaries agree to place with the trustee, funds necessary to pay any and all expenses of the trust" and "Settlor and Beneficiaries hereby agree that Trustee shall have no liability hereunder except for gross negligence or willful misconduct." It is undisputed that Ms. Younger did not see the Ross Trust Agreement until after it had been executed, yet Mr. Freeman drafted the document as though Ms. Younger, as beneficiary, were a party "agree[ing]" to various provisions. As the trial court noted, "ambiguities in a contract are to be construed against the party drafting it." *Frank Rudy Heirs Assocs. v. Moore & Assocs., Inc.*, 919 S.W.2d 609, 613 (Tenn. Ct. App. 1995).

In support of the attorney's fee award, Plaintiffs also rely upon the Ross Trust Agreement provision concerning substitute trustees:

> The substitute Trustee shall be John C. Garrison. Should he elect not to serve by reason of death, disability or resignation, the substitute Trustee shall be

- 40 -

appointed by the primary beneficiary, who has the substitute Trustee rights, powers and duties of the original Trustee hereunder.

According to this provision, Ms. Younger, as primary beneficiary representing the Younger Family Trust, appointed herself as the substitute trustee of the Ross Trust upon Mr. Garrison's resignation in January 2015. Plaintiffs maintain that when they filed this lawsuit in November 2016, Ms. Younger had the right to enforce the Ross Trust Agreement as the successor to Mr. Freeman's rights under the Agreement.

"Generally, contractual rights can be assigned." *Dick Broad.*, 395 S.W.3d at 671 (quoting *Petry v. Cosmopolitan Spa Int'l, Inc.*, 641 S.W.2d 202, 203 (Tenn. Ct. App. 1982)). *See Bowers v. Estate of Mounger*, 542 S.W.3d 470, 485 (Tenn. Ct. App. 2017) (("[A]n assignment does not extinguish the underlying contract, but rather it transfers the assignor's contract rights against the other contracting party to the assignee who succeeds to the assignor's rights under the underlying contract." (quoting *SunTrust Bank, Nashville v. Johnson*, 46 S.W.3d 216, 226 (Tenn. Ct. App. 2000))). The Ross Trust Agreement includes the following assignment provision entitled, "Parties Bound":

> This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

Upon review, we determine that as the successor trustee of the Ross Trust, Ms. Younger stepped into Mr. Freeman's shoes and was entitled to enforce the Agreement, including recovering attorney's fees and costs as the prevailing party. *See Bowers*, 542 S.W.3d at 485 ("One of the general principles of the law of assignments is that the assignee 'steps into the shoes of the assignor' with regard to the matters covered by the assignment." (quoting *SunTrust Bank, Nashville v. Johnson*, 46 S.W.3d 216, 226 (Tenn. Ct. App. 2000))). Thus, as both the third-party beneficiary and the substitute trustee of the Ross Trust Agreement, Ms. Younger (as trustee of the Younger Family Trust) was entitled to enforce the Ross Trust Agreement and recover attorney's fees as the prevailing party in this lawsuit. *See Spangler v. McClung*, No. M2024-00055-COA-R3-CV, 2025 WL 262335, at *7 (Tenn. Ct. App. Jan. 22, 2025) ("[P]arties who have prevailed in litigation to enforce their contractual rights are entitled to recover their reasonable attorney's fees once they demonstrate that the contract upon which their claims are based contains a provision entitling the prevailing party to its attorney's fees." (quoting *Eberbach v. Eberbach*, 535 S.W.3d 467, 474 (Tenn. 2017))).

Mr. Freeman has not raised an issue regarding whether the attorney's fees awarded were reasonable. We note that Plaintiffs followed the trial court's direction by submitting Ms. Younger's counsel's affidavit delineating what he described as his reasonable attorney's fees in addition to Ms. Younger's affidavit concerning the fees she had incurred. We discern no error in the trial court's award to Plaintiffs of reasonable attorney's fees.

## D. Modification

We affirm the trial court's award to Plaintiffs of damages, inclusive of attorney's fees. However, we have found a mathematical error in the trial court's calculation of the total amount of the judgment. The court awarded to Plaintiffs $418,450.87 in damages plus $252,867.19 in attorney's fees. These two figures added together equal $671,318.06, rather than the $684,861.13 the trial court stated in the final judgment. Therefore, we modify the trial court's final judgment to award a total of $671,318.06 to Plaintiffs.

## VII. Attorney's Fees on Appeal

In responding to this appeal, Plaintiffs request an award of appellate attorney's fees as "the intended beneficiary and the Substitute Trustee of the Evelyn Ross Trust." Inasmuch as we have determined that Plaintiffs are entitled to attorney's fees under the fee-shifting provision of the Ross Trust Agreement analyzed above, we further determine that Plaintiffs are entitled to an award of reasonable attorney's fees on appeal. *See Spangler*, 2025 WL 262335, at *7 ("These fee-shifting provisions 'must be enforced as written regardless of whether the parties are before a trial court or an appellate court.'" (quoting *Eberbach v. Eberbach*, 535 S.W.3d 467, 474 (Tenn. 2017))). Accordingly, we grant Plaintiffs' request and remand this issue to the trial court to determine the reasonable amount of attorney's fees incurred by Plaintiffs in responding to this appeal.

## VIII. Conclusion

For the foregoing reasons, we modify the trial court's total monetary judgment in favor of Plaintiffs to reduce it from $684,861.13 to $671,318.06. We affirm the trial court's judgment in all other respects. We grant Plaintiffs' request for an award of reasonable attorney's fees on appeal. We remand this case to the trial court for enforcement of the modified judgment, collection of costs below, and a determination of Plaintiffs' reasonable appellate attorney's fees consistent with the Opinion. Costs on appeal are assessed to the appellant, Robert P. Freeman.


s/ Thomas R. Frierson, II
THOMAS R. FRIERSON, II, JUDGE